## BECKHAM *v.* SEABOARD AIR-LINE RAILWAY.

1. In an action to recover damages on account of a fire starting on the defendant's premises, as a general rule it is necessary for the plaintiff to show that the fire was unlawfully kindled or negligently started or guarded.

2. Although a railroad company may be negligent in storing oil and waste in a wooden building in close proximity to the plaintiff's house, and in suffering tramps and others to occupy the building containing the inflammable substances and to keep lights burning therein, it is not liable for the loss of an adjacent building by fire caused by the careless or accidental act of a person not in its employ, but in its building by permission. The proximate cause of the injury is not the alleged negligence of the defendant, but the intervening act of a responsible agency.

3. If the owner of a building in flames not caused by his negligence or positive act owes any duty to adjacent proprietors to prevent the spread of flames to adjacent buildings, it is only such duty as the exigencies of the particular case may require.

Submitted July 18, 1906.—Decided February 14, 1907.

Action for damages. Before Judge Martin. Wilcox superior court. September 23, 1905.

L. M. Beckham sued the Seaboard Air-Line Railway for $6,442, upon substantially the following allegations: That he was, on April 9, 1901, the owner of the Eureka Hotel, a two-story frame building of Abbeville, Georgia, situated near the line of defendant's track; that on the opposite side of the right of way from the hotel defendant had erected an iron house, for the purpose of storing oil and waste, which house was a safe and desirable place for this purpose, "but that for the sake of convenience said oil and said waste, both being inflammable materials, were on said date, and for several months previous thereto, stowed and kept in a small wooden structure, situated on the right of way of said defendant, north of its track, and in close and dangerous proximity to said hotel; that for several months previous to said date the floor of said small wooden house was allowed to remain soaked and saturated with oil, and the door of the same allowed to remain open by night and day, allowing free ingress and egress to and from said little wooden building," and tramps and others were permitted to sleep "over night" in this house where oil and waste were kept, and to burn lights therein, although the depot and defendant's agent at the depot were within twenty yards of this little house; that for at least two months before the date named, "and from day to day for the space of two months immediately preceding said date, said defendant was aware of the fact that said oil and waste were kept in said little wooden house, that the floor of the same was kept continually soaked and saturated with oil as aforesaid, and tramps and others slept over night and kept lights burning

therein as aforesaid:" that on the date named "two negroes, who had been allowed and permitted by the defendant to sleep in this house, and to keep a lamp burning therein, overturned the lamp and ignited the waste, and that the building, being highly inflammable for the reasons aforesaid, was soon enveloped in flames, threatening to communicate same to plaintiff's hotel; which fact was well known to defendant's agents in charge of its depot; that the little wooden building could easily have been dragged from this position of proximity to defendant's hotel by an engine of defendant, which was there steamed up, but that defendant's agent, and the engineer of said train, also an agent of defendant, though implored to move same, refused so to do until the flames were communicated to petitioner's hotel; that plaintiff's hotel was destroyed as aforesaid by defendant's negligence, which consisted in storing and keeping such inflammable material in this house, within fifty feet of and in dangerous proximity to the hotel, in permitting its door to be left open, in permitting tramps and others to occupy and sleep in the same, and to keep lights burning therein, in not keeping the oil and waste in the iron house made for that purpose, in allowing the floor of the house to become saturated with oil and made highly inflammable, and in neglecting and refusing "to haul away said house with said engine, the same being a locomotive engine as aforesaid, when by so doing the destruction of petitioner's hotel aforesaid would have been avoided." The court allowed an amendment to the petition, alleging, that on a former occasion, by reason of the oil-soaked condition of the floor, this house, while being used as a baggage-room by defendant, had caught fire, greatly endangering plaintiff's hotel; and that though well informed of the fact, defendant's agents "yet persisted in negligently and wrongfully keeping said wooden house stored with oil, the floor being soaked therewith, and highly inflammable, and in allowing the door to be open day and night." This amendment was made in order to meet a demurrer of the defendant, upon an intimation of the court that the demurrer would be sustained. After allowing the amendment the court sustained the demurrer, and to this the plaintiff excepted.

*E. H. Williams*, for plaintiff.

*Thomas Eason* and *D. B. Nicholson*, for defendant.

EVANS, J. (After stating the facts.) The acts of negligence charged against the defendant are susceptible of two general classifications. The first consisted in storing and keeping inflammable material in a small wooden house within fifty feet of the plaintiff's property, which was destroyed by fire; in the use of this house so as to allow the floor to become saturated with oil and made highly inflammable, and in permitting the door to be left open and suffering tramps and others to occupy and sleep in the house, and to keep lights burning therein. The second act of alleged negligence consisted in the failure to remove the house where the oil was stored after it became ignited, by attaching one of defendant's locomotives thereto which was standing near-by and under steam. In regard to the first group of alleged negligent acts, it would be unprofitable to enter into an elaborate discussion as to whether proper diligence would have required the defendant to keep its inflammable material in the iron house, rather than in the wooden house, or whether its maintenance in the manner alleged in the petition amounted to negligence or a nuisance. It is a matter of common knowledge that in the operation of machinery lubricating oils are necessary. It is also commonly known that illuminating oils are in general use by railroad companies in the maintenance of necessary signal lights at night. A property owner has the right to use his property in any manner not forbidden by the law, so long as he does not offend the maxim "sic utere tuo ut alienum non lædas." It might be questioned whether the keeping of such material in such a house, and suffering the house to be occupied by strolling tramps, may be a nuisance. Even upon the assumption that these various acts amounted to negligence on the part of the defendant, it by no means follows that the injury sustained by the plaintiff in the destruction of his hotel was the proximate result of these alleged negligent acts. Only such damages as are traceable to the negligent act, and are the legal and natural result of the act done, are recoverable. If contingent circumstances preponderate largely in causing an injurious effect, the damages are too remote to be the basis of a recovery against the wrong-doer. Civil Code, §§ 3912, 3913. If the injury would not have resulted from the ordinary and natural consequences of the negligent acts of the party sought to be held liable, but was caused by the intervention of a responsible third party, the law will not look beyond this responsible agency

doing the act directly causing the injury. "To entitle a party to recover damages of a railroad company on account of the negligence of its agents, it should appear that the negligence was the natural and proximate cause of the injury; for should it appear that the negligence of the railroad company would not have damaged the party complaining but for the interposition of a separate independent agency, over which the railroad company neither had nor exercised control, then the party complaining can not recover." *Perry* v. *Central R. Co.*, 66 *Ga.* 746.

The plaintiff thus describes the origin of the fire which destroyed his building. "Two negroes who had been allowed and permitted by the defendant to sleep in said little wooden house, and to keep a lamp therein, overturned said lamp and ignited said waste," which set fire to the house of the defendant containing the inflammable material, and from which the flames were communicated to plaintiff's hotel. These negroes were not alleged to be servants or employees of the defendant. It does not appear what was the character of these persons,—whether they were prudent or circumspect, or whether the use of a lamp by them was unnecessary or improper. Nor is it alleged how the lamp was overturned,— whether as a result of unavoidable accident, or of negligence on the part of these "negroes." If their act was negligent, and it did not appear that the defendant knew them to be other than prudent persons, when it permitted them to' occupy the house, the primary cause of the fire could not be attributable to any negligence of the railroad company, but the parties guilty of the negligent act would be responsible for its consequences. On the other hand, if neither the railroad company nor the negroes were negligent, the fire would be the result of accident, and the defendant would not be responsible for damages caused thereby. *Montgomery* v. *East Tenn. Ry. Co.*, 94 *Ga.* 332. In an action to recover damages from a fire originating upon the property of the defendant, as a general rule it is necessary to show that the fire was unlawfully or negligently kindled, or negligently guarded. *Talmadge* v. *Central Ry. Co.*, 125 *Ga.* 400. As the fire originated from the upsetting of a lamp, and as it is not alleged in what respect the railroad company was negligent in allowing the persons who overturned the lamp to occupy a building on their premises, its responsibility for the origin of the conflagration is not apparent.

3. It is further contended that even if the railroad was not responsible for the origin of the fire, its servants and agents did not exercise ordinary care in preventing the spread of the flames from its own property to that of plaintiff. Even if under some circumstances the owner of a building in flames not caused by his negligence or positive act may owe some sort of diligence to prevent the spread of the fire to contiguous property, the circumstances alleged in the petition did not render the railroad company liable for failure to respond to the plaintiff's request to move the burning house. Plaintiff alleges that the defendant's dereliction of duty consisted in the refusal of its agents to drag the burning house from where the fire originated to a place where it would not probably have set fire to his property. He insisted that there was a locomotive on the tracks standing near-by, steamed up, and that he implored the engineer to move the same, and he refused to do so until the flames were communicated to his property. It is by no means apparent that this earnest request of the plaintiff was at all feasible. It does not appear that it was possible; it may have been that the heat was so intense that no attachment could be made to the house so that it could be drawn by the locomotive; or the railroad company at the time may not have been provided with such attachments as would enable it to move a burning house by connecting it with one of its locomotives. Nor is it at all clear, even if the house was not in flames, that it could have been moved by the engine. The nearness of the burning house to the track, and the size of the house, are not disclosed. The allegations in this respect are insufficient to charge the railroad company with responsibility for the burning of plaintiff's house. The judge, therefore, did not err in sustaining the demurrer.

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent.*