## THE SANTA RITA.

(District Court, N. D. California. June 22, 1909.)

No. 13,643.

1. TORTS (§ 15*)—GROUNDS OF ACTION—PROXIMATE CAUSE OF INJURY.

The fact alone that an act of defendant was in violation of a penal statute does not afford ground for the recovery of damages by a third person, unless such act was also the proximate cause of the injury complained of.

[Ed. Note.—For other cases, see Torts, Cent. Dig. § 19; Dec. Dig. § 15.*]

2. NEGLIGENCE (§ 59*)—"PROXIMATE CAUSE" OF INJURY—NATURAL AND PROBABLE CONSEQUENCES.

An act of negligence is not the "proximate cause" of an injury, in a legal sense, where there was an independent intervening cause, unless the injury was not only the natural, but the probable, result of such negligence, and the intervening cause should reasonably have been foreseen.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 72; Dec. Dig. § 59.*

For other definitions, see Words and Phrases, vol. 6, pp. 5758–5769; vol. 8, p. 7771.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. SHIPPING (§ 79*)—PROXIMATE CAUSE OF INJURY—INTERVENING EFFICIENT
CAUSE.

    A steamer lying beside Long Wharf at Oakland, Cal., discharged a con-
siderable quantity of fuel oil, which had escaped into the hold, into the
waters of the bay, in violation of the statute, and it floated under the
wharf, which was 90 feet wide, and around vessels lying on the opposite
side. By some independent means a fire was started on the wharf, which
burned a portion of the flooring and some cars, and damaged a vessel lying
on the opposite side from the steamer; her injury being increased by
burning oil which floated around her sides and caught fire from the burn-
ing wharf. *Held*, that the act of the steamer in discharging the oil into
the bay was not the proximate cause of the injury, nor a concurrent cause,
but only created a condition which made the subsequent fire, which was
the proximate cause, more disastrous, and that she was not liable for such
injury.

    [Ed. Note.—For other cases, see Shipping, Cent. Dig. § 344; Dec. Dig.
§ 79.*]

In Admiralty. Libel by the Société Nouvelle D'Armement, as own-
er of the French bark Boieldieu, against the steamer Santa Rita for
damages. Libel dismissed.

William Denman, for libelant.
Pace, McCutchen & Knight, for the Santa Rita.

DE HAVEN, District Judge. This is a libel by the owner of the
French bark Boieldieu against the steamer Santa Rita to recover
damages. The libel alleges that the Boieldieu was injured by a fire
caused by the ignition of fuel oil of a highly inflammable character,
negligently discharged from the Santa Rita into the waters of San
Francisco Bay.

It appears, from the evidence, that on March 11, 1907, the Santa
Rita, a steam vessel 450 feet long, was moored to the northerly side
of Long Wharf, Oakland; the wharf being on her starboard. The
British ship Whittlieburn and the French bark Boieldieu were moored
on the southerly side of the same wharf. There was a space of about
60 feet between the two last-named vessels. The wharf was 90 feet
wide, and, lying as they did, parallel to the Santa Rita, the Whittlie-
burn reached from the stern of the Santa Rita to forward of her mid-
ships, and the Boieldieu overlapped the bow of the Santa Rita. It will
thus be seen that in the position in which these three vessels were
moored they, with the floor of the wharf, formed a covered lane or
alleyway on the water 450 feet long and 90 feet wide, with an opening
or space on one side of about 60 feet. The ends of the wharf were,
of course, also open.

The Santa Rita was, upon the day above stated, discharging a cargo
of pipe upon the wharf, and had been so engaged for two or three
days prior thereto. This pipe was taken from a hold into which
large quantities of fuel oil and water had escaped, and in lifting the
pipe from the hold more or less of the oil was carried on the deck of
the vessel, and thence found its way into the waters of the bay. There
is also evidence tending to show that some oil and water had been
pumped from the cargo hold directly onto the deck or into the ship's

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

scuppers, while the pipe was being discharged; but how much does not appear.

Between the hours of 4 and 5 o'clock of the afternoon of March 11, 1907, a portion of the wharf, adjacent to the Boieldieu's berth and extending back a few feet toward the berth of the Whittlieburn, caught fire, and about 4,500 square feet of its flooring was burned, and some empty cars and three or four cars loaded with hay, which were on that part of the wharf, were also burned. The Boieldieu also caught fire, and as the result thereof a number of the steel plates covering her hull, on both port and starboard sides, were badly warped or buckled, and a portion of her rigging was also burned. It further appears that on the afternoon of this fire a light wind was blowing against the port quarter of the Santa Rita. It was also shown that at the time of the fire a donkey engine was being used in discharging the cargo from the Whittlieburn.

The contention of the libelant is that the oil which had been discharged from the Santa Rita accumulated in large quantities under the wharf and around the Boieldieu, and that a spark from an engine on the wharf, or some live coals taken from the fire box of the donkey engine, or from the Boieldieu's galley, were thrown into the bay, igniting the oil floating thereon, and that in this way the fire was started, resulting in damage both to the wharf and the Boieldieu. My conclusion, however, from the evidence, is that the fire started on the floor of the wharf, and was thence, after some little time, communicated to the Boieldieu.

The evidence also shows that if there was, in fact, a large body of oil floating on the water, under the wharf, and around the Boieldieu, such oil could have been ignited by subjecting it to a very high degree of heat, and bringing the vapor, which it would throw off, in contact with fire; and there is also evidence that oil was seen burning upon the water on the port side of the Boieldieu, the side next to the wharf. The heat from the wharf was probably sufficient to buckle the steel plates on the Boieldieu's port side, and set fire to her rigging, without the presence of oil; but I am unable to account for the injury which the opposite, or starboard, side of the Boieldieu sustained, except upon the assumption that it was caused by burning oil floating on her starboard, the flames of which came in direct contact with the steel plates on that side of the vessel. Upon consideration of all the evidence, I have, with some hesitancy, reached the conclusion that fuel oil, discharged by the Santa Rita in large quantity, was floating on the water around the Boieldieu, and was ignited by fire and heat from the burning wharf.

It also appears that the Santa Rita was unharmed, and the testimony of the witness O'Neil, which I think is entitled to credit, is to the effect that, if the Boieldieu was injured by burning oil, there was not, at that time, any connection between such oil and the Santa Rita; that, if the Santa Rita had been then discharging oil into the bay, the conflagration would have gone back to the source of supply, because a body of oil ignited on one side will burn over the surface which it covers.

1. Section 374½ of the Penal Code of the state of California makes it a misdemeanor, punishable by fine or imprisonment, for any person to deposit or "to pass in, or into the waters of any navigable bay or river, in this state, any coal tar or refuse or residuary product of coal, petroleum, asphalt, bitumen or other carbonaceous material or substance." But the mere fact that the act of the Santa Rita, of which libelant complains, was a violation of this statute, will not entitle the libelant to recover, unless such act was the proximate cause of the injury complained of. Shearman & Redfield on Negligence, §§ 13, 27. Nickey v. Steuder, 164 Ind. 189, 73 N. E. 117. Stone v. Boston & Albany R. R. Co., 171 Mass. 536, 51 N. E. 1, 41 L. R. A. 794.

The question, then, for decision at this time, is whether or not the negligent or wrongful act of the Santa Rita in discharging fuel oil into the waters of San Francisco Bay was the proximate cause of the damage sustained by the Boieldieu. The rule is elementary that:

"The breach of duty upon which an action is brought must be not only the cause, but the proximate cause, of the damage to the plaintiff." Shearman & Redfield on Negligence, § 26.

"If an injury has resulted in consequence of a certain wrongful act or omission, but only through or by means of some intervening cause, from which last cause the injury followed as a direct and immediate consequence, the law will refer the damage to the last or proximate cause, and refuse to trace it to that which was more remote." 1 Cooley on Torts (3d Ed.) p. 99.

And the same principle has been stated in this language:

"A prior and remote cause cannot be made the basis of an action, if such remote cause did nothing more than furnish the condition or give rise to the occasion by which the injury was made possible, if there intervened between such prior or remote cause and the injury a distinct, successive, unrelated, and efficient cause of the injury. If no danger existed in the condition, except because of the independent cause, such condition was not the proximate cause." 29 Cyc. 496.

The rule thus stated is, however, subject to this qualification:

"If the intervening act is such as might reasonably have been foreseen or anticipated as the natural or probable result of the original negligence, the original negligence will, notwithstanding such intervening act, be regarded as the proximate cause of the injury." Nickey v. Steuder, 164 Ind. 189, 73 N. E. 117.

In Russell v. German Fire Ins. Co., 100 Minn. 528, 111 N. W. 400, 10 L. R. A. (N. S.) 326, it is said:

"Whatever may have been the original meaning of the maxim, 'Causa proxima et non remota spectatur', it has been clearly settled, by a long line of decisions, that what is meant by proximate cause is not that which is last in time or place, not merely that which was in activity at the consummation of the injury, but that which is the procuring, efficient, and predominant cause."

And the court in that case further defined proximate cause, as:

"That from which the effect might reasonably be expected to follow, without the concurrence of any unforseen circumstances."

In Beckham v. Seaboard Air Line Railway, 127 Ga. 550, 56 S. E. 638, 12 L. R. A. (N. S.) 476, the court reaffirms the following statement of the rule found in an earlier decision of that court:

"To entitle a party to recover damages of a railroad company on account of the negligence of its agents, it should appear that the negligence was the natural and proximate cause of the injury; for, should it appear that the negligence of the company would not have damaged the party complaining, but for the interposition of a separate, independent agency, over which the railroad company neither had nor exercised control, then the party complaining cannot recover."

In Davis v. Chicago, M. & St. P. Railway Co., 93 Wis. 470, 67 N. W. 16, 1132, 33 L. R. A. 654, 57 Am. St. Rep. 935, the court said:

"The negligence is not the proximate cause of the accident, unless, under all the circumstances, the accident might have been reasonably foreseen by a man of ordinary intelligence and prudence. It is not enough to prove that the accident is the natural consequence of the negligence. It must also have been the probable consequence."  *

A comprehensive statement of the rule concerning actionable negligence and what constitutes the proximate cause of an injury is the following, found in the opinion of Judge Sanborn in Cole v. German Savings & Loan Soc., 124 Fed. 115, 59 C. C. A. 595, 63 L. R. A. 416:

"An injury that results from an act of negligence, but that could not have been foreseen or reasonably anticipated as its probable consequence, and that would not have resulted from it, had not the interposition of some new and independent cause interrupted the natural sequence of events, turned aside their course, and produced it, is not actionable. Such an act of negligence is the remote, and the independent intervening cause is the proximate, cause of the injury."

Then follows this clear definition of the meaning of the phrase "natural and probable consequence," used by the courts in announcing the rule of law that a defendant is not responsible for damage resulting from a negligent act, unless it was the "natural and probable consequence" of such act:

"A natural consequence of an act is the consequence which ordinarily follows it; the result which may reasonably be anticipated from it. A probable consequence is one that is more likely to follow its supposed cause than it is to fail to follow it."

When the rule, stated in the foregoing cases, is applied to the facts of this case, it would seem clear that the libelant is not entitled to recover. The alleged negligent or wrongful act of the Santa Rita was not the proximate cause of the damage to the Boieldieu. The natural consequence of discharging crude oil into the waters of San Francisco Bay, under the circumstances appearing here, would not be the production of a conflagration. The oil was absolutely harmless while lying upon the surface of the water, and, but for the burning of the wharf, would have remained so. Goodlander Mill Co. v. Standard Oil Co., 63 Fed. 400, 11 C. C. A. 253, 27 L. R. A. 583. The burning of the wharf was entirely disconnected and unrelated to the original act of the Santa Rita in discharging the oil, and was not caused by any person connected with that vessel and whose actions were subject to her control. Unless, therefore, the burning of the wharf and the consequent ignition of the oil were matters which ought to have been reasonably anticipated as probable—that is, more likely to occur than otherwise—the burning of the wharf must be found to be the efficient cause of the damage to the Boieldieu.

173 F.—27

Was the burning of the wharf, and the ignition of the oil, something more likely to occur than not—something that a person of ordinary prudence would have thought to be probable? The result has shown that such a fire, the ignition of oil thereby, and the consequent damage to the Boieldieu, were matters which might occur—events which any person of ordinary judgment would have known to be possible; but the question is, not whether a person of ordinary prudence would have known that such results were possible, but whether they would have been regarded by him as probable—something likely to occur, and therefore to be guarded against—by not discharging fuel oil into the bay. It seems to me this question must receive a negative answer. A man of extreme caution might have anticipated the result; but one of ordinary prudence and foresight would not have thought, in view of all the surrounding circumstances, that fuel oil, if discharged into the waters of the bay, with its tides and winds, would probably be set on fire, by the accidental or negligent burning of the wharf, or by live coals thrown into the bay and coming in contact with the oil.

A case very much in point is that of Stone v. Boston & Albany R. R. Co., 171 Mass. 536, 51 N. E. 1, 41 L. R. A. 794, decided by the Supreme Judicial Court of Massachusetts. It was there held, as appears from the syllabus, given in the annotated report, that:

"Negligence in storing oil upon a station platform, and permitting it to remain there in violation of statute, is not the proximate cause of damage by a fire which is started by the careless dropping of a match by a man who comes to the platform to deliver goods, and who is in no sense a servant, agent, or guest of the railroad company."

The court in its opinion laid stress upon the fact that the person who started the fire was in no sense a servant of the defendant, or one whose actions the defendant had the right to control, and, while conceding that it is the rule of law that the act of a third person, intervening and contributing a condition necessary to the injurious effect of the original negligence, will not excuse the first wrongdoer, if such intervening act ought to have been reasonably foreseen, thus proceeded to dispose of the question before it:

"Was the starting of, the fire by Casserly the natural and probable consequence of the defendant's negligent act in leaving the oil upon the platform? According to the usual experience of mankind, ought this result to have been apprehended? The question is, not whether it was a possible consequence, but whether it was probable; that is, likely to occur, according to the usual experience of mankind. That this is the test of responsibility, applicable to a case like this, has been held in very many cases, according to which a wrongdoer is not responsible for a consequence which is merely possible, according to occasional experiences, but only for a consequence which is probable, according to ordinary and usual experience. One is bound to anticipate and provide against what usually happens and what is likely to happen; but it would impose too heavy a responsibility to hold him bound in like manner to guard against what is unusual and unlikely to happen, or what, as it is sometimes said, is only remotely and slightly probable. A high degree of caution might, and perhaps would, guard against the injurious consequences which are merely possible; but it is not negligence, in a legal sense, to omit to do so. * * * Tried by this test the defendant was not responsible for the consequences of Casserly's act. * * * It was, of course, possible that some careless person might come along and throw down a lighted match where a fire would be started by it. * * * But it was not according to the usual and ordinary

course of events. In failing to anticipate and guard against such an occurrence or accident, the defendant violated no legal duty which it owed to the plaintiff."

So, in this case, the most that can be said is that a prudent man would have known that it was possible that some one might set the wharf on fire, or throw live coals upon the floating oil, and that as a result of either of these acts the oil might be ignited; but such a succession of events was not probable, and for that reason the prior negligence of the Santa Rita in discharging the oil into the bay cannot be regarded as the efficient or proximate cause of the injury to the Boieldieu.

2. The libelant, however, contends that the negligence of the Santa Rita was concurrent with that of the persons responsible for the burning of the wharf, or the ignition of the oil, and that she was therefore a joint tort-feasor, and so liable for the whole damage. A similar question was presented in the case last cited, and in reply to the contention of the plaintiff there, that the negligence of the defendant in leaving the oil upon the platform of the railroad company was concurrent with the negligent act of Casserly in starting the fire, the court said:

"But this is not a just view of the matter. The negligence of the defendant preceded that of Casserly, and was an existing fact when he intervened."

The same may be said in the present case. The act of the Santa Rita only furnished the condition which, it may be conceded, made the subsequent burning of the wharf more disastrous in its effects; but it did not cause the fire, and the rule which governs is that which was followed in Lapleine v. Morgan's Louisiana & Texas R. & S. Co., 40 La. Ann. 761, 5 South. 49, 1 L. R. A. 378, in which case it was held, in substance, that:

"When two causes co-operate to produce the damage resulting from the legal injury, the proximate cause is the originating and efficient cause which sets the other causes in motion."

See, also, Insurance Company v. Boon, 95 U. S. 117, 130, 24 L. Ed. 395.

It follows, from these views, that the libel must be dismissed, with costs to claimant; and it is so ordered.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes