10154.   HIGGINBOTHAM *v.* ROME RAILWAY & LIGHT
COMPANY.

The undisputed evidence clearly showing that, even if the defendant company was negligent as alleged, the direct and proximate cause of the homicide sued for was the intervening act of a separate and inpendent agency, the verdict for the defendant was not only authorized but demanded, and the court did not err in overruling the motion for a new trial.

DECIDED MAY 16, 1919.

Action for damages; from Floyd superior court—Judge Wright. September 17, 1918.

*Harris & Harris,* for plaintiff. *Dean & Dean,* for defendant.

BROYLES, P. J. Vinnie Higginbotham sued the Rome Railway & Light Company for damages on account of the homicide of her husband, Tom Higginbotham. A verdict for the defendant

48

was returned, and the plaintiff excepted to the court's refusal to grant a new trial. Her counsel stated in their brief that the evidence showed the following state of facts: "The defendant had a line of wires, heavily charged with electricity, strung along the side of the Summerville road, within the limits of the City of Rome, on a pole about twelve or fourteen feet in height. This pole was about seventy-five feet from a railroad trestle. The wires stretched from this pole to a knob underneath the trestle. The pole was at the base of a five-foot embankment, and between the pole and that part of the trestle where the wires were attached there was an embankment or elevation several feet above the mean level of the base of the aforesaid pole. About midway between this pole and the trestle there was a much-used pathway, which had been in constant use for fifteen or twenty years. Ordinarily, prior to the intervening cause that was responsible for the death of Tom Higginbotham, the wires were only four and one half to five feet (according to different witnesses) above the ground. The wires had been in this condition for a considerable length of time. Every witness who testified as to this fact stated that a man could reach the wire at any time over this pathway. One Saturday afternoon, about three o'clock, a blast was shot by the City of Rome gang, and a rock knocked one of the wires from its mooring on the pole and caused it to sag or bow to within a few feet of the ground, the height being less than the height of an ordinary man. Immediately a volunteer, at the request of the guard of the city gang, called the head office of the defendant and notified it of the accident, and asked that a man be sent to repair the same. The party answering the telephone agreed to do this. However, the defendant denied receiving the message, and the plaintiff was never able to show that such a message was received by defendant. The wire remained down until the next day, although the current was cut off soon after the homicide of plaintiff's husband. The wire had been strung there for twelve or fifteen years and the insulation had rotted off. The company admitted that it made no regular inspection rounds, and had no inspector, but depended on its regular employees, in their rounds, discovering and making known any defects or accidents. About midnight on the date on which the wire was knocked off plaintiff's husband was walking along this pathway, *as had been his custom for a*

*number of years* [italics ours], and came in contact with the fallen wire and was instantly killed. He was not taken loose from the wire until one of the defendant's employees cut off the current. The defendant admitted that it owned the wires and furnished the current, but defended solely on the ground that the primary cause of the accident was the direct or proximate result of the act of the City of Rome in shooting the blast."

Adopting as our own this statement of facts, it clearly appears to us that, even if the defendant was negligent as alleged in the declaration, the effective and proximate cause of the homicide of the plaintiff's husband was the intervening act of a separate and independent agency, the City of Rome, and that the verdict in favor of the defendant was not only authorized but demanded. See, in this connection, *Perry* v. *Central Railroad,* 66 *Ga.* 746 (5); *Mayor &c. of Macon* v. *Dykes,* 103 *Ga.* 847 (31 S. E. 443); *Andrews* v. *Kinsell,* 114 *Ga.* 390 (40 S. E. 300, 88 Am. St. R. 25); *Beckham* v. *Seaboard Air-Line Ry.,* 127 *Ga.* 550 (2), 551 (56 S. E. 638, 12 L. R. A. (N. S.) 476); *Postal Telegraph-Cable Co.* v. *Kelly,* 134 *Ga.* 218 (67 S. E. 803; *Southern Ry. Co.* v. *Barber,* 12 *Ga. App.* 286 (77 S. E. 172); *Atlantic Coast Line R. Co.* v. *Adeeb,* 15 *Ga. App.* 842 (84 S. E. 316); Anderson *v.* Baltimore & Ohio R. Co., 74 W. Va. 17 (81 S. E. 579, 51 L. R. A. (N. S.) 888); Harton *v.* Forest City Tel. Co., 146 N. C. 429 (59 S. E. 1022, 14 L. R. A. (N.S.) 956, 14 Ann. Cas. 390); American Bridge Co. *v.* Seeds, 75 C. C. A. 407 (144 Fed. 605, 11 L. R. A. (N.S.) 1041); Cole *v.* German Savings & Loan Society, 59 C. C. A. 593 (124 Fed. 113); Stone *v.* Boston & Albany R. Co., 171 Mass. 536 (51 N. E. 1, 41 L. R. A. 794, 4 Am. Neg. R. 490); Leeds *v.* New York Telephone Co., 178 N. Y. 118 (70 N. E. 219); Curtis on Law of Electricity, §§ 435, 439, 441, 443, 444; 1 Thompson on Negligence, §§ 55, 56, 57.

The above being controlling in the case, it is unnecessary to consider the special grounds of the motion for a new trial, as they complain only of errors in the charge of the court and of the court's refusal to comply with certain requests to charge.

*Judgment affirmed. Bloodworth, J., concurs. Stephens, J., dissents.*

STEPHENS, J., dissenting. It is undisputed that an electric wire belonging to the defendant company was knocked from its fasten-

ing on a pole, and fell to the ground, as a result of blasting in the vicinity, done by the City of Rome. While this alone was an independent agency, yet I do not think that it can be said that, under the undisputed evidence, it was the proximate cause of the injury to plaintiff's husband, who was killed by coming in contact with the wire while it lay, heavily charged with electricity, in close proximity to the ground, across a path over which the deceased was traveling.

Plaintiff charges that it was negligence upon the part of the defendant company to have so erected its pole and strung its wire that the latter was only five and one-half feet above the ground across said pathway; to have so erected the pole and strung the wire that the latter was less than twenty to thirty feet above the ground at places where pedestrains were accustomed to travel; to have allowed the wire to be so constructed that the insulation was worn and rotted and furnished no protection against harm to any one who might come in contact with the wire; to have erected the wire for the purpose of conducting electricity of a heavy voltage in such a manner that the wire would, if it should fall from the pole, sag or swing in close proximity to the ground so as to become a dangerous menace to people passing over the ground; to have failed to remove or repair the wire after defendant had been informed of its having been knocked down; in not attaching the wire to a pole thirty feet from the ground, so that even though the glass knob was broken, the wire would not have sagged to within five and a half feet of the ground. It is charged that by reason of these acts of negligence the plaintiff's husband was killed.

There was evidence to the effect that the wire, after it was knocked from the pole by the blasting, lay in dangerous proximity to the ground for several hours, from about the middle of the afternoon until about the middle of the following night, when deceased came in contact with it and was killed, that the wire at the place where it fell, and before it was knocked from its fastening on the pole, was strung upon a pole of the height of about ten or twelve feet over the pathway where plaintiff's husband was killed; that the insulation on the wire was worn at this place; and that the place where the wire fell and the deceased came in contact with it was a frequently traveled pathway over an open

lot. As there was evidence to support any of the aforesaid allegations of negligence it was sufficient to raise an issue of fact for the jury. The fact alone that a wire charged with electricity, as the evidence in this case shows, sagged and lay near the ground, from sometime in the afternoon until the middle of the night, was sufficient to raise an issue of negligence for the jury to pass upon, and it cannot be said that the evidence demanded the inference that the prior act of blasting was the proximate cause of the injury. See Joyce on Electric Law, §§ 438-b, 450. There being an issue of fact upon any one of the allegations of negligence, a new trial should be granted for failure of the court to properly submit any one of the plaintiff's contentions to the jury. The particular allegation of negligence, and which was supported by the evidence, and which the court failed entirely to submit to the jury, was that defendant company was negligent in having its heavily charged wire strung on a pole "only about five and one-half feet above the ground across the pathway," causing the wire, after it was dislodged from the pole, to reach near to the ground by sagging. It was a reasonable inference for the jury to draw from the evidence, that, if the wire should fall from the height at which the evidence shows it was strung, it would reach within several feet of the ground and come so close thereto as to become an instrument of death and be a menace to human life. It certainly could have been reasonably anticipated that the wire might fall or be knocked from the pole by some cause—whether from the particular cause shown by the evidence in this case or not is immaterial. This raises an issue as to whether or not the wire being dangerously strung in close proximity to the ground, or whether the blasting, constituted the proximate cause of the homicide. From the evidence the question of proximate cause was clearly one for the jury. In addition, and by way of strengthening plaintiff's contention, it might be said that the defendant could have reasonably anticipated that the wire might be knocked from its fastening from such a blasting as disloged it in the present case, since the City of Rome had been intermittently blasting in this immediate vicinity for a number of years, and the defendant in the exercise of ordinary care might have known of it.

The Supreme Court of Georgia in the case of *Southern Railway Co.* v. *Webb*, 116 *Ga.* 152 (42 S. E. 395, 59 L. R. A. 109),

held that "while the general rule is that if, subsequently to an original wrongful or negligent act, a new cause has intervened, of itself sufficient to stand as the cause of the misfortune, the former must be considered as too remote, still if the character of the intervening act claimed to break the connection between, the original wrongful act and the subsequent injury was such that its probable or natural consequences could reasonably have been anticipated, apprehended, or foreseen by the original wrong-doer, the causal connection is not broken, and the original wrong-doer is responsible for all the consequences resulting from the intervening act." In an elaborate opinion by Judge Cobb in that case many authorities are quoted with approval. Among the quotations are the following: "A tortious act may have several consequences, concurrent or successive, for all of which the first tortfeasor is responsible. It is not intervening *consequences,* but intervening *causes* which relieve. The test is to be found, it has been said, not in the number of intervening events or agents, but in their character, and in the natural and probable connection between the wrong done and the injurious consequences. So long as it affirmatively appears that the mischief is attributable to the original wrong as a result which might reasonably have been foreseen as probable, legal liability continues." Watson's Personal Injuries, § 58. "Some authorities have formulated rules on this subject designed for general application, as that the defendant is not responsible where there has intervened the wilful wrong of a third person, or is liable where such act is of a negligent character merely. But the better doctrine is believed to be that whether or not the intervening act of a third person will render the earlier act too remote depends, simply, upon whether the concurrence of such intervening act might reasonably have been anticipated by the defendant." Id. § 71. In Pittsburgh Railway Co. v. Taylor, 104 Penn. St. 315 (49 Am. R. 580), it is said: "In determining what is proximate cause the true rule is, that the injury must be the natural and probable consequence of the negligence, such a consequence as under the surrounding circumstances of the case might and ought to have been foreseen by the wrong-doer as likely to flow from his act." In Lane v. Atlantic Works, 111 Mass. 139, it is said: "The injury must be the direct result of the misconduct charged; but it will not be considered too remote if,

according to the usual experience of mankind, the result ought to have been apprehended. The act of a third person, intervening and contributing a condition necessary to the injurious effect of the original negligence, will not excuse the first wrong-doer, if such act ought to have been forseen. The original negligence still remains a culpable and direct cause of the injury. The test is to be found in the probable injurious consequences which were to be anticipated, not in the number of subsequent events and agencies which might arise." In Seale v. Ry. Co., 65 Tex. 278 (57 Am. R. 602), it is said: "If the intervening cause and its probable or reasonable consequences be such as could reasonably have been anticipated by the original wrong-doer, the current of authority seems to be that the connection is not broken."

In the case of *Valdosta Street Railway Co. v. Fenn,* 11 *Ga. App.* 586 (3), 587 (75 S. E. 984), the Court of Appeals held: "The question of proximate cause depends upon the facts of each particular case, and, in ascertaining in a particular case what was the proximate cause of the injury, the conclusion reached depends upon whether the injury alleged was such a natural and probable consequence, under the circumstances of the case, as that it might and ought to have been forseen by the wrong-doer as likely to ensue from his act. The jury were authorized to find in this case that the act of the child was not a proximate cause, but that the motorman, in leaving his car in such condition that a child could set it in motion, was the prime and underlying essential and efficient cause of the injury." See also, in this connection, *Atlantic Coast Line R. Co. v. Barton,* 14 *Ga. App.* 160 (5), 164 (80 S. E. 530); *Bonner v. Standard Oil Co.,* 22 *Ga. App.* 532 (96 S. E. 573), and cases cited.

A number of authorities along this line could be quoted, but the above are sufficient. There being clearly an issue of fact for the jury, and the trial judge having failed, as set out in the amendment to the motion for a new trial, to properly submit to the jury, after having been timely requested to do so, the question as to whether or not the close proximity in which the wire was erected to the ground was the proximate cause of the injury, a new trial should be granted.