Willie **TURNER**

v.

**SOUTHERN RAILWAY COMPANY.**
Civ. A. No. 11425.

United States District Court
N. D. Georgia,
Atlanta Division.
Dec. 26, 1968.

Adair, Goldthwaite, Stanford & Daniel, Atlanta, Ga., for plaintiff.

Greene, Buckley, DeRieux, Moore & Jones, Atlanta, Ga., for defendant.

## ORDER

EDENFIELD, District Judge.

The court is presented with motions for summary judgment under Rule 56 of the Federal Rules of Civil Procedure filed by both plaintiff and defendant in this personal injury action.

On the night of September 13, 1967, plaintiff was a passenger in the front seat of an automobile driving northbound on Interstate 75–85, hereinafter called the South Expressway. While driving under defendant's railway bridge, a heavy metal object, called an angle bar, fell from the bridge through the front windshield of the car and struck the plaintiff. According to plaintiff, he was rendered unconscious and suffered the loss of his left kidney and spleen, a ruptured colon and abdominal wall, and other injuries. Plaintiff contends that he has been wholly unable to work and, as of December 13, 1967, when a formal complaint was first filed, had lost in excess of $1400 in wages and incurred $2200 in medical and hospital bills. Plaintiff sues defendant for $500,000 and costs.

According to plaintiff, the railroad bridge in question is located some 50 to 100 yards north of the point where the University Avenue entrance ramp intersects the northbound lane of the South Expressway. The bridge has been used by Southern Railway since 1957, when it was initially built, and is under their continuous control. There are several sets of parallel tracks on the railroad bridge. According to defendant, an iron pipe is located between the tracks and a raised walkway. Defendant estimates the walkway to be from four to four and one-half feet across and some twelve inches above the level of the tracks. The edge of the walkway directly overlooks the passing traffic on the South Expressway below. There are handrails on the walkway for pedestrian use.

The record clearly shows that accumulations of dismantled track parts are on the defendant's right-of-way. Plaintiff contends that they have been on the right-of-way since two unused sets of tracks were dismantled two to three years ago. While defendant's records are not clear on this point, the rusted appearance of these metal pieces, some small, some large, indicates they may have been on or about the tracks on this bridge for a considerable time.

The tracks still used by the railroad on this bridge are inspected on a regular weekly basis by the track supervisor and/or the assistant track supervisor, to assure safe operation of the trains. The dismantled track parts would have been clearly visible to these inspectors.

The force propelling the angle bar over the bridge is unknown to both parties. Investigation by the Atlanta police has produced no clues. The angle bar itself is estimated to be two feet long, four to six inches high, and 35 to 50 pounds in weight. The record indicates that when the bar was inspected after

the accident, it was scratched and rusty but had no dents. According to both the plaintiff and Richard Eskew, a police detective who investigated the bridge soon after the occurrence, the dismantled track parts were strewn about the right-of-way. Eskew says that most were located over the northbound lanes of the highway. Plaintiff states that some were leaning against or near the south walkway. These dismantled tracks seem to have no particular immediate business purpose. According to the defendant, they are left in the right-of-way until they are "needed elsewhere" or are used as scrap. Plaintiff states that under railroad regulations these unused track components were systematically collected until 1955 or 1956, when the regulations were changed not requiring their collection.

Plaintiff states that the tracks on the bridge in question are in constant daily use. According to his reading of defendant's timetable, several trains may have gone over the bridge during the approximate time of the accident. However, there is no indication in the record that a train was overhead when plaintiff was passing under the bridge.

The railroad yard and bridge area are occasionally frequented by vandals, drunks, and hoboes. (Deposition of Jackson Melton, pp. 16, 32; and Deposition of E. J. Nicholson, p. 25.) School children cross the bridge, too. (Deposition of Billy Howell, p. 18.) However, neither the plaintiff nor anyone in the car with him at the time, nor anyone mentioned in the record, saw anyone on or near the bridge at the time of the accident. Police surveillance shortly after the accident failed to reveal any unauthorized persons on the bridge.

Although the railroad provides special agents on a twenty-four-hour-a-day basis at the railroad yards, there was no agent in the area of the bridge during the time of the accident.

In their motions for summary judgment both parties recognize the common elements necessary for a negligence action. There must be a duty flowing from the defendant to the plaintiff; a negligent act or omission; a proximate relationship between the negligence and the resulting injury; and an injury to the plaintiff. The heart of the issue in this case is whether or not reasonable men could differ as to the liability of the defendant. We find that reasonable men could so differ, and thus deny summary judgment to both parties.

Stated succinctly, plaintiff's argument on behalf of his summary judgment motion is as follows. Southern Railway had a duty or ordinary care to avoid injuring persons near its tracks. This duty was breached by permitting the accumulation of dismantled track parts on defendant's right-of-way, when these objects were inherently dangerous and the railroad knew the area was frequented by disreputable characters. The requirement of proximate cause is satisfied, according to plaintiff, because the plaintiff's injuries would not have occurred had the defendant not negligently maintained its right-of-way. Although an intervening agency may have propelled the angle bar over the bridge, defendant is not absolved from liability, for either the intervening force was the railroad trains themselves or an independent force reasonably foreseeable by the defendant and hence within the scope of the original risk defendant created. The injury to plaintiff is clear and not in dispute. Plaintiff also urges that he has made out a prima facie case of negligence by virtue of satisfying Georgia Code § 94–1108.

In response to plaintiff's motion for summary judgment and in support of its own motion, defendant makes a number of assertions. First, defendant concedes for purposes of argument that it was negligent in not clearing its right-of-way of dismantled track pieces. But the defendant urges that plaintiff has not and cannot show proximate cause. Defendant states that human intervention

is the only feasible explanation for propulsion of the angle bar over the bridge and that a wilful, intervening human action broke the chain of defendant's negligence. Defendant urges that it had no reason to anticipate this independent intervention. Moreover, the defendant states that plaintiff has not made out a prima facie case either on the facts or by virtue of Georgia Code § 94–1108, which defendant contends plaintiff cannot use absent a showing of proximate cause. Last, the defendant urges that it had no duty under Georgia law to keep its right-of-way "absolutely clear".

■ In considering these motions for summary judgment, the court has recognized the general principle that issues of negligence are ordinarily not susceptible of summary adjudication. See 6 Moore, Federal Practice, ¶ 56.17[42]; Wright, Federal Courts, Ch. 10, § 99. However, there are numerous cases in which summary judgment has been granted, both for defendants, see, e. g., Berry v. Atlantic Coast Railroad Co., 273 F.2d 572 (4th Cir., 1940), and for plaintiffs, see, e.g., American Airlines v. Ulen, 87 U.S. App.D.C. 307, 186 F.2d 529 (D.C.A., 1949). In such cases the facts are not in issue and reasonable men cannot differ on the ultimate issue of liability.

■ In the instant case there are no serious disputes as to the facts per se. But, unlike other cases, in negligence actions summary judgment will not lie unless, in addition to no genuine factual issues, reasonable men could not differ on the question of ultimate liability. In the case at hand, the facts raise serious questions of judgment, which a jury is peculiarly able to make. Reasonable men could differ on the crucial element of liability here.

■■ First, the facts raise a question of whether the defendant had a duty to remove accumulated track parts from a bridge over a heavily traveled artery. The case law in Georgia is clear that although there may be no duty imposed on a railroad to keep its right-of-

way absolutely clear, see Southern Railway Co. v. Scott, 215 Ga. 739, 743, 113 S.E.2d 459 (1960), it must exercise "ordinary care" to keep its right-of-way reasonably clear of dangerous substances. Georgia Railroad & Banking Co. et al. v. Flynt, 93 Ga.App. 514, 519, 92 S.E.2d 330 (1965); Western & Atlantic Railroad Co. v. Tate, 129 Ga. 526, 59 S.E. 266 (1907). It is a question for the jury to decide if this degree of care was used in the instant action or if defendant's original acts or omissions were negligent as to the plaintiff.

Second, reasonable men could also differ as to whether defendant's actions were the "proximate cause" of plaintiff's injuries. Both parties recognize that proximate cause may well be the crucial factor in the case. In fact, defendant, for the purposes of argument, concedes initial negligence, but challenges plaintiff on the issue of proximate cause. This issue is increasingly being seen by many courts and legal authorities as another way of defining duty, which is discussed above. See Prosser, Torts, Ch. 9, § 49; 100 A.L.R. 2d, § 1, at 948, 959, 965.

It is well stated that:

"No definite principle can be laid down by which to determine the question of proximate cause but that question is 'always to be determined on the facts of each case upon mixed considerations of logic, common sense, justice, policy, and precedent. * * *'" 100 A.L.R.2d, § 1, at 946.

In assessing proximate cause, consideration must be given to several factors, including foreseeability of the risk created by the unused track parts; reasonableness of the defendant's conduct with respect to their accumulation; whether the parts were inherently dangerous; the possible application of res ipsa loquitor to the case; the scope of defendant's duty toward plaintiff; and, perhaps most important, the character of the intervening cause. These are issues which deserve consideration by a jury because

there is reasonable doubt as to their answer. As Dean Prosser points out in an excellent discussion on the relative functions of judge and jury in questions of proximate cause:

"In any case where there might be reasonable difference of opinion as to the foreseeability of a particular risk, the reasonableness of the defendant's conduct with respect to it, or the normal character of the intervening cause, the question is for the jury, subject of course as to suitable instructions from the court as to the legal conclusion to be drawn as the issue is determined either way. By far the greater number of cases which have arisen have been of this description; and to this extent it may properly be said that 'proximate cause is ordinarily a question of fact for the jury, to be solved by the exercise of good common sense in the consideration of the evidence of each particular case.'"

The mere existence of an intervening independent agency does not decide the case for defendant. Higdon v. Georgia Winn-Dixie, Inc., 112 Ga.App. 500, 502, 145 S.E.2d 808 (1965); Mayor and Council of Unadilla v. Felder, 145 Ga. 440, 89 S.E. 423 (1916), and cases cited therein; Rollestone v. Cassirer & Co., 3 Ga.App. 161, 59 S.E. 442 (1907); Southern Railway Co. v. Webb, 116 Ga. 152, 42 S.E. 395, 59 L.R.A. 109 (1902). Rather, the character of the independent force is crucial. Beckham v. Seaboard Air-Line Railway, 127 Ga. 550, 56 S.E. 638, 12 L.R.A.,N.S., 476 (1906).

Unless the jury finds that vibrations from defendant's own railroad cars or actions by defendant's own agents propelled the angle bar over the bridge, consideration must be given to an independent human force propelling the bar. But a ruling on the legal effect of such an independent intervening force depends on whether the defendant should have reasonably anticipated the independent force and its consequences, see,

Bowen v. Smith-Hall Grocery Co., 141 Ga. 721, 82 S.E. 23, L.R.A. 1915D, 617 (1914); Mullis v. Chaika, 118 Ga.App. 11, 15, 162 S.E.2d 448 (1968); Parsons, Inc. v. Youngblood, 105 Ga.App. 583, 125 S.E.2d 518 (1962); whether the independent force was within the scope of the risk created by the defendant, see Restatement of Torts, 2d, § 442A; whether the intervening act is in and of itself sufficient to stand as the cause of the injury, see Spires v. Goldberg et al., 26 Ga.App. 530, 106 S.E. 585 (1921); and whether the independent force acted simultaneous to, or after, the original act of negligence, see Restatement of Torts, 2d, § 441. These are all considerations for the jury to find on the facts, upon proper instruction from the court.

This court cannot hold as a matter of law that reasonable men could not differ over the factors which determine liability under tort in this case. Mullis v. Chaika, supra. Therefore, summary judgment will not lie for either party.

The parties raise an additional issue, the application of Georgia Code § 94–1108 to this case. The code section provides that:

"In all actions against railroad companies for damages done to persons or property, proof of injury inflicted by the running of locomotives or cars of such companies shall be prima facie evidence of the want of reasonable skill and care on the part of the servants of the companies in reference to such injury."

Despite its literal application only to cases of "injury inflicted by the running of locomotives or cars of such companies", the plaintiff contends that he falls within the purview of this act. He cites Georgia cases, see, e. g., Butler v. Central of Georgia Ry., Co., 41 Ga.App. 115, 151 S.E. 834 (1929); Seaboard Air-Line R. R. v. Bishop, 132 Ga. 71, 81, 63 S.E. 1103 (1908); Smith v. Atlantic Coast Line R. R. Co., 5 Ga.App. 219, 62 S.E. 1020 (1908); Central Railroad v. Gleason & Harmon, 69 Ga. 200 (1882), to

demonstrate that the statute has been applied to cases relating to the operation, not merely the actual physical "running", of trains. He asks the court to apply the statute to all conditions essential to the operation of trains. Defendant's main contention is that § 94–1108 cannot be used by the plaintiff absent a showing of proximate cause. For present purposes, the court need not decide the applicability of this provision because the plaintiff has already made out a case sufficient to withstand defendant's summary judgment motion, without the inference created by § 94–1108.

The court denies both motions for summary judgment. The question of liability is one for the jury.