### INHABITANTS OF HYDE PARK *vs.* PHINEAS E. GAY.

Norfolk.   Jan. 26. — Sept. 7, 1876.   ENDICOTT & DEVENS, JJ., absent.

On the morning of the Lord's day, before daylight, the fire department of a town, for the purpose of extinguishing a fire, ran hose from a river across a railroad track, which hose were cut in two by a gravel train owned by the defendant. *Held,* in an action of tort by the town for the injury to the hose, that the persons in charge of the hose had a right, in the absence of positive information, to expect that no train would be run on that day; and that those in charge of the train were for that reason required to exercise greater caution. *Held, also,* that the plaintiff was not a trespasser. *Held, also,* that a request to rule that danger signals should have been made in each direction, by the plaintiff, was rightly refused. *Held, also,* that if the running the train on the Lord's day, in violation of law, was the direct cause of the injury, the action could be maintained, without showing further negligence on the part of the defendant.

TORT for running over and destroying fire hose laid across a railroad track.   Trial in the Superior Court, before *Bacon*, J., who allowed a bill of exceptions in substance as follows :

About half past two o'clock on Sunday morning, September 27, 1874, a fire broke out in a building at Hyde Park, about seventy feet westerly of the line of the Boston, Hartford and Erie Railroad.   Neponset River ran one hundred feet easterly of the railroad, and the fire department of the town stationed two steam fire-engines on the bank of the river, and carried four lines of hose across the track of the railroad to the burning building.   The place where the lines of hose were laid across the track was a few feet northerly of the railroad station, and there were platforms on each side of the track, about eighteen inches high, so that the lines of hose were supported by the platforms, and were not on the track.

The defendant was the owner of a locomotive engine and of gravel cars, and had an agreement with trustees, who were in the possession and management of the railroad, by which he was authorized, at certain rates, to transport gravel in his own cars

over the railroad, at such times as it could be done without interfering with the regular trains, the defendant employing all the men to run his trains, and agreeing to indemnify the trustees against any damage to third parties that might be done by his trains. From about seven o'clock, Saturday evening, September 26, to about six o'clock the next morning, the defendant had the use of the track, free from all other trains.

During the progress of the fire, and about ten minutes past three o'clock on Sunday morning, a locomotive engine and train of loaded gravel cars belonging to the defendant, and under the management of his men, passing from his gravel pits in Dedham to the city of Boston, struck the lines of hose, swept them along and broke them, and did some other damage.

The station agent of the trustees at Hyde Park had nothing to do with the defendant or his trains; but inquiry was made of the station agent, soon after the fire broke out, and he informed the chief of police, and others, that there was no train to pass over the road before six o'clock in the morning. There was conflicting evidence as to whom, and how, signals were given to warn any train that might be approaching that there was an obstruction on the track. But the defendant contended and offered evidence tending to show that the only signal which could be seen on board the train was a light near the station, making the signal in use on the railroad to indicate that everything was all right and to go ahead. The fire was kept down, and confined to the inside of the building, so that it could not be seen outside. There was no moon, but the evidence was conflicting as to the degree of darkness, and as to mist or fog in the air.

The defendant requested the judge to instruct the jury as follows: "1. That the defendant, at the time of the acts complained of, had the same right to the possession and use of the railroad, at the place where the lines of hose were laid across it, that landowners have to their lands, so far as the plaintiff in this case is concerned.

"2. That the fact that it was about three o'clock, on Sunday morning, that the accident happened, does not make the rights of the parties any different from what they would have been if it had happened at the same hour on any other morning.

" 3. That it was the duty of the persons having charge of the hose across the track to post danger signals in each direction, at a sufficient distance, to give any train that might approach notice of danger, and if there was time to post such signals, and the duty was neglected, and the accident happened in consequence, the plaintiff cannot recover.

" 4. That the plaintiff must show that the managers of the train had sufficient notice given them that the lines of hose were across the track, or that there was danger, in season to stop the train. That if the signal given was the usual signal used upon this railroad, that everything was all right and to go ahead, it cannot be held that it was a signal to stop, or of danger, unless the managers of the train understood it to be such.

" 5. That the station agent at Hyde Park was not the agent of the defendant, and that the defendant is not responsible for any information he may have given.

" 6. That under the circumstances of this case the defendant is not liable, unless the managers of the train were guilty of reckless and wanton misconduct in the management of the train.

" 7. That the plaintiff can only recover in this case by showing that the same precautions were taken against an unexpected train as would be required in case of a regular train."

The judge gave the first instruction prayed for, in relation to the defendant's right to the use of the road, substantially as requested, and also gave the instruction requested, in relation to the station agent, but added that the inquiries made of the station agent and his replies might be considered by the jury as bearing upon the question of the care exercised by the plaintiff; refused to give the other instructions requested, and instructed the jury, among other things, as follows :

" 1. This action rests on the principle that the law gives a remedy to any one who, without fault or negligence on his part, suffers an injury by the unlawful act or negligence of another.

" 2. The running of this train on the Lord's day was an unlawful act on the part of the defendant, and if such unlawful act or the negligence of the defendant was the cause of the injuries, the plaintiff may recover therefor, provided it was free from fault or negligence.

" 3. It must, however, appear that it was necessary, in order to extinguish a dangerous conflagration, to place the hose across the tracks, and that in so placing the hose, the plaintiff did not omit any act which a person of ordinary sense, prudence and capacity would do under precisely the same circumstances.

" 4. It is not negligence on the part of the plaintiff not to foresee and provide against the unlawful act of the defendant, unless the plaintiff had some reason to anticipate such act; but in order to recover, the plaintiff must show that, from the time the approach of the train was known, all was done that a person of ordinary sense, prudence and capacity would do under the same circumstances, to avoid and escape injury.

" 5. In this case, if you find that the plaintiff ought to have given a signal of danger to the train, and that it is negligence not to do so, it is not necessary that the signal should be understood by those in charge of the train, but only that the signal should be such that it would have been understood by any person in the use of ordinary care in charge of such train."

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*J. R. Bullard*, for the defendant.

*N. B. Bryant*, (*W. H. H. Andrews* with him,) for the plaintiff.

COLT, J. The fact that the defendant, by his servants and agents, was running a train of cars in violation of the statute regulating the observance of the Lord's day, has an important and material bearing on the relative rights and duties of the parties at the time of the accident. It affects the question of the care required of both. The persons in charge of the hose, in the absence of positive information, had a right to expect that no train would be run on that day contrary to law. And those in charge of the train were for that reason required to exercise greater caution towards them. The jury could not have been properly told, as requested by the defendant, that the rights of the parties were no different from what they would have been on any other day. *Wright* v. *Malden & Melrose Railroad*, 4 Allen, 283, 290. *Lane* v. *Atlantic Works*, 111 Mass. 136.

Nor could the judge properly instruct the jury that those who were in charge of the hose were bound to use certain danger signals or other specified precautions, or to show that the man-

agers of the train had notice sufficient to stop, in order to entitle the plaintiff to recover. The question what acts of care were required, under all the circumstances, was for the jury, and it was left to them with proper instructions. Nor could it be ruled, on the facts disclosed, that the defendant was only liable for reckless and wanton misconduct in running the train, as in cases of injury to mere trespassers. The town was not a trespasser, but was in the exercise of a common law right to enter upon private property in order to prevent the spread of fire, and the case shows a just occasion for the exercise of the right. *Metallic Compression Co.* v. *Fitchburg Railroad,* 109 Mass. 277.

All the specific instructions requested were either given or rightly refused. The men who had charge of the fire engines and apparatus were required only to provide against such injury to those who were in the possession and use of the railroad as might be reasonably apprehended in the exercise of ordinary care. They were not required to anticipate, without previous notice, the unlawful act of the defendant, and if, when they became aware of the approaching train, they did all that a person of ordinary prudence would do under the same circumstances to avoid injury, they were not chargeable with negligence.

To the defendant's objection that the jury was permitted to find for the plaintiff, although the managers of the train were free from any fault except that of running a train on Sunday, it is sufficient to say that the instructions given plainly required the jury to find that the act of running the train on the Lord's day was the distinctive and direct cause of the injury complained of; and this is enough to support the action.

*Exceptions overruled.*