## EDWARD E. STONE *vs.* BOSTON AND ALBANY RAILROAD COMPANY.

Worcester.      October 7, 8, 1897. — July 1, 1898.

Present: FIELD, C. J., ALLEN, KNOWLTON, MORTON, LATHROP, '& BARKER, JJ.

*Loss of Property by Fire — Railroad — Negligence — Remoteness of Cause — Action.*

Although a railroad corporation is negligent in storing oil on the platform of its freight house in a town, it is not liable for the loss of adjacent buildings by fire caused by the careless act of a person not in its employ and rightfully on its premises, and which ignites the oil and spreads to the buildings. KNOWLTON, J. dissenting.

TORT, for the loss of the plaintiff's property by fire caused by the alleged negligence of the defendant. Trial in the Superior Court, before *Hopkins,* J., who ruled that the plaintiff could not recover, and directed the jury to return a verdict for the defendant; and the plaintiff alleged exceptions. The facts appear in the opinion.

The case was argued at the bar in October, 1897, and afterwards was submitted on briefs to all the justices except *Holmes,* J.

*W. S. B. Hopkins,* (*C. M. Rice & H. W. King* with him,) for the plaintiff.

*F. P. Goulding,* for the defendant.

ALLEN, J. This is an action of tort to recover for the loss of the plaintiff's buildings and other property by fire, under the following circumstances. The defendant owned and operated a branch railroad extending from its main line at South Spencer to the village of Spencer, and had at the Spencer terminus a passenger station, a freight house, and a freight yard, all adjoining a public street. On the side of the freight house, and extending beyond it about seventy-five feet, was a wooden platform about eight feet wide and four feet high, placed upon posts set in the ground, the under side being left open and exposed. The main tracks ran along on the front side of this platform

and freight house, and on the rear of the platform there was a freight track, so near as to be convenient to load and unload cars from and upon it. The plaintiff was engaged in the lumber business, buying at wholesale, and selling at wholesale and retail, manufacturing boxes, etc. His place of business comprised several buildings, some of which were across the street from the defendant's buildings; and his principal buildings were about seventy-five feet from the place on the defendant's premises, beneath the platform, where the fire originated. The evidence tended to show that the platform was mostly used for the storing of oil which had been brought upon the railroad, until it was taken away by the consignees; and that the platform had become thoroughly saturated with oil which had leaked from the barrels, and which not only saturated the platform but dripped to the ground beneath. More or less rubbish accumulated from time to time under the platform, and was occasionally carried away. The evidence tended to show that this space below had been cleaned out two or three weeks before the fire. On the day of the fire, September 13, 1893, from twenty-five to thirty barrels of oil and oil barrels were upon the platform. Some were nearly or quite empty, some were partly full, but most of them were probably full or nearly full. The only evidence to show how the fire originated tended to prove that one Casserly, a teamster, brought a load of boots to be shipped upon a car which was standing upon the track on the rear side of the platform; that he was smoking a pipe; that he stepped into the car to wait for the defendant's foreman of the yard, who was to help him unload the boots; that in stepping in he stubbed his toe and knocked some of the ashes and tobacco out of his pipe; that he relighted the pipe with a match, and threw the match down; and that at this time he was standing in the door of the car, facing the platform. It must be assumed, upon the evidence, that the fire caught upon the ground underneath the platform from the match thrown down by Casserly. All efforts to extinguish the fire failed; it spread fast and was almost immediately upon the top of the platform, running up a post according to one of the witnesses, and very soon it reached the barrels of oil, which began to explode, and the fire communicated to the plaintiff's buildings, and they were burned.

There was evidence tending to show that all of the oil had been upon the platform for a longer time than forty-eight hours. According to the testimony of the plaintiff, the platform was never to his knowledge empty of oil and oil barrels, it was completely saturated with oil, and that general condition of things, so far as the platform was concerned, had existed for eight years, ever since he himself had been there. Upon the evidence introduced by the plaintiff, the court directed a verdict for the defendant.

The plaintiff in substance contends before us that the defendant was negligent in storing oil upon the platform, taking into consideration the condition of the platform and of the ground and material under it, and the length of time during which the oil had been allowed to remain there ; that, irrespectively of the question of negligence, the platform with the oil upon it constituted a public nuisance, especially in view of Pub. Sts. c. 102, § 74, providing that oil composed wholly or in part of any of the products of petroleum shall not be allowed to remain on the grounds of a railroad corporation in a town for a longer time than forty-eight hours, without a special permit from the selectmen ; that the defendant is responsible for the damage resulting from the public nuisance, whether the act of starting the fire was due to a third person or not ; and that the question should have been submitted to the jury whether the damage to the plaintiff's property was the natural and proximate consequence of the defendant's tort.

Upon the evidence, the supposed tort of the defendant, whether it be called negligence or nuisance, appears to have been limited to the keeping of oil too long upon the platform. Assuming this oil to have been a product of petroleum, and so within the statute cited, nevertheless the defendant as a common carrier was bound to transport it, and deliver it to the consignees. The oil, as is well known, was an article of commerce and in extensive use, and the defendant was bound to transport it and to keep it for a reasonable time after its arrival in Spencer, in readiness for delivery. There was no evidence that the oil was liable to spontaneous ignition, or that the platform was an unsuitable place for its temporary storage till it could be removed, or that the defendant could have prevented the escape of oil upon

the platform from leaky barrels. But we may assume without discussion that the defendant was in fault in keeping the oil there so long, and that if the oil had been removed within forty-eight hours after its arrival the fire would probably not have been attended with such disastrous consequences.

Nevertheless the question remains, and in our view this becomes the important and decisive question of the case, whether, assuming that the defendant was thus in fault, the plaintiff introduced any evidence which would warrant a finding by the jury that the damage to his property was a consequence for which the defendant is responsible; or, in other words, whether the act of Casserly in starting the fire was such a consequence of the defendant's original wrong in allowing the oil to remain upon the platform that the defendant is responsible to the plaintiff for it.

In approaching this question, it must be borne in mind that Casserly was in no sense a servant, agent, or guest of the defendant. He brought a load of goods to the defendant's station to be carried upon the defendant's railroad. The defendant was bound by law to accept and carry them. It could not lawfully exclude Casserly from its grounds. By Pub. Sts. c. 112, § 188, it was bound to give all persons reasonable and equal terms, facilities, and accommodations for the transportation of merchandise upon its railroad, and for the use of its depot and other buildings and grounds. Casserly came there in his own right, and the defendant is not responsible for him in the same way that perhaps it might be responsible for a servant, agent, or, according to some statements of the law, guest. *Lothrop* v. *Thayer*, 138 Mass. 466. It is also to be borne in mind that this was not a case of spontaneous ignition of a substance liable to ignite spontaneously, as was the case in *Vaughan* v. *Menlove*, 3 Bing. N. C. 468. Nor did the defendant owe to the plaintiff the duties of a carrier of passengers or freight towards its customers, or any other duties growing out of a contract with the plaintiff. There was no contract of any kind between the plaintiff and the defendant.

The rule is very often stated that in law the proximate and not the remote cause is to be regarded; and in applying this rule it is sometimes said that the law will not look back from the injurious consequence beyond the last sufficient cause, and

especially that where an intelligent and responsible human being has intervened between the original cause and the resulting damage, the law will not look back beyond him. This ground of exonerating an original wrongdoer may be found discussed or suggested in the following decisions and textbooks, amongst others. *Clifford* v. *Atlantic Cotton Mills*, 146 Mass. 47. *Elmer* v. *Fessenden*, 151 Mass. 359. *Hayes* v. *Hyde Park*, 153 Mass. 514. *Freeman* v. *Mercantile Accident Association*, 156 Mass. 351. *Lynn Gas & Electric Co.* v. *Meriden Ins. Co.* 158 Mass. 570. *Mutual Ins. Co.* v. *Tweed*, 7 Wall. 44. *Milwaukee & St. Paul Railway* v. *Kellogg*, 94 U. S. 469. *Washington & Georgetown Railroad* v. *Hickey*, 166 U. S. 521. *Reiper* v. *Nichols*, 31 Hun, 491. *Mars* v. *Delaware & Hudson Canal*, 54 Hun, 625. *Read* v. *Nichols*, 118 N. Y. 224. *Leavitt* v. *Bangor & Aroostook Railroad*, 89 Maine, 509. *Cuff* v. *Newark & New York Railroad*, 6 Vroom, 17. *Delaware, Lackawanna, & Western Railroad* v. *Salmon*, 10 Vroom, 299. *Curtin* v. *Somerset*, 140 Penn. St. 70. *Pennsylvania Co.* v. *Whitlock*, 99 Ind. 16. *Goodlander Mill Co.* v: *Standard Oil Co.* 63 Fed. Rep. 400, 405. Shearman, Negl. §§ 38, 666. Whart. Negl. §§ 134 *et seq.*

It cannot, however, be considered that in all cases the intervention even of a responsible and intelligent human being will absolutely exonerate a preceding wrongdoer. Many instances to the contrary have occurred, and these are usually cases where it has been found that it was the duty of the original wrongdoer to anticipate and provide against such intervention, because such intervention was a thing likely to happen in the ordinary course of events. Such was the case of *Lane* v. *Atlantic Works*, 111 Mass. 136, where it was found by the jury that the meddling of young boys with a loaded truck left in a public street was an act which the defendants ought to have apprehended and provided against, and the verdict for the plaintiffs was allowed to stand. In the carefully expressed opinion by Mr. Justice Colt the court say : " In actions of this description, the defendant is liable for the natural and probable consequences of his negligent act or omission. The injury must be the direct result of the misconduct charged ; but it will not be considered too remote if, according to the usual experience of mankind, the result ought to have been apprehended. The act of a third person, intervening

and contributing a condition necessary to the injurious effect of the original negligence, will not excuse the first wrongdoer, if such act ought to have been foreseen. The original negligence still remains a culpable and direct cause of the injury. The test is to be found in the probable injurious consequences which were to be anticipated, not in the number of subsequent events and agencies which might arise." According to this statement of the law, the questions in the present case are, Was the starting of the fire by Casserly the natural and probable consequence of the defendant's negligent act in leaving the oil upon the platform? According to the usual experience of mankind, ought this result to have been apprehended? The question is not whether it was a possible consequence, but whether it was probable, that is, likely to occur, according to the usual experience of mankind. That this is the true test of responsibility applicable to a case like this has been held in very many cases, according to which a wrongdoer is not responsible for a consequence which is merely possible, according to occasional experience, but only for a consequence which is probable, according to ordinary and usual experience. One is bound to anticipate and provide against what usually happens and what is likely to happen; but it would impose too heavy a responsibility to hold him bound in like manner to guard against what is unusual and unlikely to happen, or what, as it is sometimes said, is only remotely and slightly probable. A high degree of caution might, and perhaps would, guard against injurious consequences which are merely possible; but it is not negligence, in a legal sense, to omit to do so.

There may not always have been entire consistency in the application of this doctrine; but, in addition to cases of boys meddling with things left in a public street, courts have also held it competent for a jury to find that the injury was probable, although brought about by a new agency, when heavy articles left near an opening in the floor of an unfinished building, or in the deck of a vessel, were accidentally jostled so that they fell upon persons below; *McCauley* v. *Norcross*, 155 Mass. 584; *The Joseph B. Thomas*, 81 Fed. Rep. 578; when sheep, allowed to escape from a pasture and stray away in a region frequented by bears, were killed by the bears; *Gilman* v.

*Noyes,* 57 N. H. 627 ; and when a candle or match was lighted by a person in search of a gas leak, with a view to stop the escape of gas; *Koelsch* v. *Philadelphia Co.* 152 Penn. St. 355; and in other cases not necessary to be specially referred to. In all of these cases, the real ground of decision has been that the result was or might be found to be probable, according to common experience.

Without dwelling upon other authorities in detail, we will mention some of those in which substantially this view of the law has been stated. *Davidson* v. *Nichols,* 11 Allen, 514. *McDonald* v. *Snelling,* 14 Allen, 290. *Tutein* v. *Hurley,* 98 Mass. 211. *Hoadley* v. *Northern Transportation Co.* 115 Mass. 304. *Hill* v. *Winsor,* 118 Mass. 251. *Derry* v. *Flitner,* 118 Mass. 131. *Freeman* v. *Mercantile Accident Association,* 156 Mass. 351. *Spade* v. *Lynn & Boston Railroad,* 168 Mass. 285, and cases there cited. *Cosulich* v. *Standard Oil Co.* 122 N. Y. 118. *Rhodes* v. *Dunbar,* 57 Penn. St. 274. *Hoag* v. *Lake Shore & Michigan Southern Railroad,* 85 Penn. St. 293. *Behling* v. *Southwest Penn. Pipe Lines,* 160 Penn. St. 359. *Goodlander Mill Co.* v. *Standard Oil Co.* 63 Fed. Rep. 400, 405, 406. *Haile* v. *Texas & Pacific Railway,* 60 Fed. Rep. 557. *Clark* v. *Chambers,* 3 Q. B. D. 327. Whart. Negl. (2d ed.) §§ 74, 76, 78, 138–145, 155, 955. Cooley, Torts, 69, 70. Add. Torts, 40. Pollock, Torts, 388. Mayne, Damages, 39, 47, 48. For a recent English case involving a question of remoteness, see *Engelhart* v. *Farrant,* [1897] 1 Q. B. 240. The rule exempting a slanderer from damages caused by a repetition of his words rests on the same ground. *Hastings* v. *Stetson,* 126 Mass. 329. *Shurtleff* v. *Parker,* 130 Mass. 293. *Elmer* v. *Fessenden,* 151 Mass. 359.

Tried by this test, the defendant is not responsible for the consequences of Casserly's act. There was no close connection between it and the defendant's negligence. There was nothing to show that such a consequence had ever happened before, during the eight years covered by the plaintiff's testimony, or that there were any existing circumstances which made it probable that it would happen. It was of course possible that some careless person might come along and throw down a lighted match where a fire would be started by it. This might, indeed, have happened upon the plaintiff's own premises, or in any other

place where inflammable materials were gathered. But it was not according to the usual and ordinary course of events. In failing to anticipate and guard against such an occurrence or accident, the defendant violated no legal duty which it owed to the plaintiff. What qualification, if any, of this doctrine should be made in case of the storage of high explosives, like gunpowder and dynamite, we do not now consider. See *Rudder* v. *Koopmann*, 116 Ala. 332; *Kinney* v. *Koopmann*, 116 Ala. 310; *Rhodes* v. *Dunbar*, 57 Penn. St. 274, 290.

The plaintiff, however, contends that this question should have been submitted to the jury. This course would have been necessary, if material facts had been in dispute. But where upon all the evidence the court is able to see that the resulting injury was not probable, but remote, the plaintiff fails to make out his case, and the court should so rule the same as in cases where there is no sufficient proof of negligence. *McDonald* v. *Snelling*, 14 Allen, 290, 299. In *Hobbs* v. *London & Southwestern Railway*, L. R. 10 Q. B. 111, 122, Blackburn, J. said: "I do not think that the question of remoteness ought ever to be left to a jury; that would be in effect to say that there shall be no such rule as to damages being too remote." It is common practice to withdraw cases from the jury on the ground that the damages are too remote. *Hammond* v. *Bussey*, 20 Q. B. D. 79, 89. *Read* v. *Nichols*, 118 N. Y. 224. *Cuff* v. *Newark & New York Railroad*, 6 Vroom, 17. *Behling* v. *Southwest Penn. Pipe Lines*, 160 Penn. St. 359. *Goodlander Mill Co.* v. *Standard Oil Co.* 63 Fed. Rep. 400, 405, 406. *Pennsylvania Co.* v. *Whitlock*, 99 Ind. 16. *Carter* v. *Towne*, 103 Mass. 507. *Hoadley* v. *Northern Transportation Co.* 115 Mass. 304. *Hutchinson* v. *Boston Gas Light Co.* 122 Mass. 219. *Elmer* v. *Fessenden*, 151 Mass. 359.

The plaintiff further contends that the negligence of the defendant in keeping the oil upon the platform was concurrent with the careless act of Casserly, and that therefore it was a case where two wrongdoers acting at the same time contributed to the injurious result. But this is not a just view of the matter. The negligence of the defendant preceded that of Casserly, and was an existing fact when he intervened, just as in *Lane* v. *Atlantic Works*, 111 Mass. 136, the negligence of the defend-

ants in leaving their loaded truck in the street preceded that of the boys who meddled with it.

The fact, if established, that the defendant's platform with the oil upon it constituted a public nuisance is immaterial, under the circumstances of the present case. If the plaintiff proved a nuisance, he need not go further and show that it was negligently maintained. But we have assumed the existence of negligence on the part of the defendant. Illegality on the part of a defendant does not of itself create a liability for remote consequences, and illegality on the part of a plaintiff does not of itself defeat his right to recover damages. The causal connection between the two still remains to be established. *Hanlon v. South Boston Horse Railroad,* 129 Mass. 310. *Hyde Park v. Gay,* 120 Mass. 589. *Hall v. Ripley,* 119 Mass. 135. *Damon v. Scituate,* 119 Mass. 66. *Kidder v. Dunstable,* 11 Gray, 342. *Hayes v. Michigan Central Railroad,* 111 U. S. 228, 241. In order to maintain a personal action to recover damages for a public nuisance, the plaintiff must show that his particular loss or damage was caused by the nuisance, just as in case of any other tort. *Wesson v. Washburn Iron Co.* 13 Allen, 95, 101, 103. *Stetson v. Faxon,* 19 Pick. 147, 154. And in considering the question of remoteness, it makes no difference what form of wrongdoing the action rests upon. *Sherman v. Fall River Iron Works,* 2 Allen, 524. *The Notting Hill,* 9 P. D. 105, 113. Mayne, Damages, 48, note.

Without considering other grounds urged by the defendant, a majority of the court is of opinion that, upon the evidence, the defendant was not bound, as a matter of legal duty, to anticipate and guard against an act like that of Casserly, he being a stranger coming upon the defendant's premises for his own purposes and in his own right.     *Exceptions overruled.*

KNOWLTON, J. I agree to nearly all of the propositions of law in the opinion of the majority, but I do not agree that the case presents no question of fact for the consideration of a jury.

It seems to me that the principal question is whether there was evidence of negligence on the part of the defendant in reference to the risk of such an accident as happened. I think that there was such evidence. To say nothing of the particulars

testified to, the fact that one is acting in violation of a criminal statute is always evidence of negligence. See Pub. Sts. c. 102, § 74. The opinion assumes that there was evidence of negligence on the part of the defendant in keeping so large a quantity of oil for so long a time in such a place. It seems to me that, if the defendant's conduct was negligent, it was in reference to the risk of just such an accident as happened. I do not know that any other kind of negligence is charged. It was to diminish the liability to such accidents that the statute was enacted. If there was negligence in violating the statute, it was because, from the storage of large quantities of kerosene oil for a long time in such an inflammable place, there was serious danger of a great and uncontrollable conflagration in connection with some accident which ought to have been contemplated, and which, in the absence of the oil, would be likely to cause little or no damage. I do not see what negligence on the part of the defendant could have been found from the evidence except its failure to anticipate and guard against such a danger. To constitute negligence creating a liability for the damages to the plaintiff, it is not necessary that the defendant should have contemplated the particular event which occurred. It is enough if it should have contemplated the probable happening of some accident of this kind, which involves danger to the property of others that ought to be guarded against.

I think the jury well might have found that the burning of the plaintiff's property was a direct result of the defendant's conduct in keeping this oil on the platform.