## Y. S. WONG v. L. L. McCANDLESS.
### No. 1971.

SUBMITTED DECEMBER 29, 1930.    DECIDED JANUARY 15, 1931.

PERRY, C. J., BANKS AND PARSONS, JJ.

OPINION OF THE COURT BY BANKS, J.

This is an action for damages resulting from an automobile accident. The circuit court, trying the case without a jury, decided that the plaintiff was entitled to recover of the defendant the sum of $4000 and entered judgment accordingly. The case is here on exceptions.

The following facts were established by the undisputed evidence: The defendant was awarded a contract by the sewer and water commission of Honolulu for the construction of certain public works and improvements known as "Kapalama Interceptor." In doing the work involved in the contract he made an excavation at the intersection of Hart and McNeill streets. This excavation was, roughly, in the shape of an L, or, more accurately, of a key, and was, on its longer side, about twenty-eight feet in length. The wider or flange portion of it was in the intersection of the streets and was about thirteen feet in width and about thirteen feet in depth. The narrower or stem portion extended along Hart street in the direction of Waikiki and was about seven feet in width. Hart street runs in an Ewa-Waikiki direction and McNeill street in a makai-mauka direction. They are both public thoroughfares in the city of Honolulu. On the night of May 2, 1929, between seven-thirty and eight o'clock, an automobile which was owned and operated by one La Barr, was traveling in a Waikiki direction along Hart street. The plaintiff was riding in the car with La Barr. The car ran into the excavation at its Ewa end and the plaintiff was injured. There was a lantern, giving a red light, fastened to a wooden pole a few feet above the ground near the makai side of the wider portion of the excavation. There was

also in the neighborhood an electric street light attached to an ordinary telephone pole about twenty-five feet high. This light was located on the mauka side of Hart street and opposite the Ewa side of McNeill street and was comparable to a fifty or sixty-watt house light.

There was evidence tending to show that there was a single wooden rail of some sort along the Ewa end of the excavation. The negligence complained of is that the excavation was left without sufficient lights or signals to adequately define its boundaries and warn passengers traveling along the highway at night of its precise location. The defenses relied on are (1) that the defendant was not guilty of negligence; (2) that the defendant's negligence, if any, was not the proximate cause of the plaintiff's injuries; (3) that the plaintiff himself was guilty of contributory negligence, and (4) that the driver of the car was guilty of negligence and that his negligence is imputable to the plaintiff.

The circuit court decided all the issues against the defendant. The first question presented by the exceptions is whether it was error under the evidence for the trial court to decide that the defendant was guilty of the negligence alleged. The defendant's obligation is clearly defined in his contract with the sewer and water commission in the following portion of one of its paragraphs: "The contractor shall, during the progress of the work, use all proper precautions and methods of procedure and construction by means of good and sufficient barriers, guards, temporary bridges, notices, lights, warnings and/or other safeguards for the prevention of accidents, and for the protection of property, and from twilight until sunrise he shall keep suitable lights burning wherever the public shall have access near or at the work in progress to define the line of safe passage." This contractual obligation is nothing more than the duty imposed upon the

defendant by law. He does not deny the obligation but claims that it was fully discharged. The measure of his duty is of course the same as that of a municipality charged with the responsibility of keeping its streets in a safe condition for public traffic. In 7 McQuillin, Mun. Corp., § 2984, the rule, as to municipal corporations, is stated as follows: "Given a condition in or close to a street, such as to be dangerous to travelers thereon, the municipality becomes. burdened with a certain duty, provided, if notice is necessary, it has notice, or ought to have had notice, thereof; and this is so even though the cause of the danger is lawful or the dangerous condition was wholly the act of a third person. This duty is to warn travelers of the danger so that they may turn back, pass around, or proceed with eyes open and watching for danger. In addition to the duty to repair, the duty of a municipality to use ordinary care to keep the streets in condition for use includes the duty where there are dangerous obstructions, declivities, or excavations in or near the street, whether created by the municipality itself or by third persons, where it has notice thereof or notice is unnecessary, to take proper precautions to guard against accidents by the use of railings, barriers, lights or the like, especially at night."

La Barr, the owner and operator of the car, testified that as he approached McNeill street he was driving on the right side of Hart street going in a Waikiki direction; that his speed was about twenty miles an hour and that it was a dark night; that the only light he saw was a red lantern on his right and that as he entered the intersection of Hart and McNeill streets he veered to the left and ran into the excavation. The plaintiff's testimony in this respect corroborated that of La Barr.

We cannot say, as a matter of law, that the warnings of danger which the evidence showed were placed at the

excavation by the defendant were a compliance with that degree of care which he was obliged to exercise. It is quite conceivable that there would be a difference of opinion on this subject among reasonable minds. This being so, whether the negligence complained of was committed was a question of fact for the determination of the trial court sitting in the place of a jury. The consensus of judicial opinion is thus stated in *Kearns* v. *Mobile L. & R. R. Co.,* 196 Ala. 99, 101: "It must of course be conceded that, as a general rule, the sufficiency of signals or barriers to give reasonable warning of or security against existing danger, especially with respect to their character, number and arrangement, is a question of fact for the jury."

The trial court having found against the defendant on this issue its conclusion cannot be disturbed.

The next question presented by the exceptions is whether, conceding the defendant's negligence, it was the proximate cause of the accident which resulted in the plaintiff's injuries. It is contended by the defendant that this question must be answered in the negative for the reason that La Barr, at the time of the accident, was guilty of negligence in operating his car, for which negligence the defendant was not responsible, and therefore La Barr's negligence, and not that of the defendant, was the proximate cause.

It appears from the record that La Barr also brought an action against the defendant for injuries received by him in the same accident which caused plaintiff's injuries. The two cases, by stipulation, were tried together. The circuit court decided that La Barr was not entitled to recover for the reason that at the time of the accident he was in a somewhat inebriated condition and therefore did not exercise the care for his own safety required of him by law. In other words, the court found that La Barr

was guilty of negligence which proximately contributed to the accident.

There is apparently a lack of entire harmony among judicial writers on the question arising out of this situation. In 29 C. J., 694, the author of the text has this to say: "By the weight of authority, where two causes combine to produce an injury, both of which are in their nature proximate, one being a culpable defect in the highway and the other some intervening occurrence for which neither party is responsible, and the injury would not have been sustained but for such defect, the municipality is liable; and this rule has been applied where the negligent or wrongful act of a third person cooperates with a defect in the highway to cause the injury. In some jurisdictions, however, it is held that the defect must be the sole cause of the injury in order to render the municipality liable, and that, where there are two efficient, independent causes, the primary cause being one for which the municipality is not responsible, and the other a defect in the highway, the injury must be referred to the former. Under this rule the municipality is not liable where the wrongful or negligent act of a third person intervenes between the defect and the injury and is a contributing cause of such injury." In 7 McQuillin, Mun. Corp., § 3035, it is said: "Except in Maine, Massachusetts, Connecticut, and perhaps one or two other States, it is well settled that the defect in the street need not be the sole cause of the injury but that the municipality is liable although there is another concurring cause, provided (1) such concurring cause is not due to the negligence of the injured person, and (2) the injury would not have been sustained except for the defect in the street. The same rule applies where the concurring cause is the act of a third person. The doctrine has been stated that where the defect in the street combines with other causes to pro-

duce injury so that both causes are proximate, the munic-
ipality is liable, provided the person injured was free
from negligence."

In Maine, Massachusetts and Connecticut the conclu-
sion that the municipalities involved were not liable was
based on the construction of statutes defining the right of
action for injuries received through defective highways.
Typical of these cases is that of *Bartram* v. *Sharon*, 71
Conn. 686. In its syllabus the court thus epitomizes its
conclusion and its reasons: "Section 2673 of the General
Statutes provides that any person injured 'by means of a
defective road or bridge,' may recover damages therefor.
*Held* that the liability of the town thus created was penal
in its nature, and as such ought not to be extended by
implication to cases in which the injury to a traveler on
the highway was caused, not by the defect alone but by
such defect combined with the culpable negligence of a
fellow traveler." In the opinion itself the Massachusetts
cases and the Maine cases, laying down the same doctrine,
are quite fully reviewed. In the course of its discussion
the court said (p. 696): "The plaintiffs place much reli-
ance on a *dictum* in *Carstesen* v. *Stratford, supra.* The
*dictum* is a correct statement of the common law." The
case of *Carstesen* v. *Stratford* is reported in 67 Conn. 428.
A reference to that case shows that the doctrine laid
down, and which the court in the *Bartram* case charac-
terized as a correct statement of the common law, is as
follows (p. 436): "If no fault can be attributed to the
plaintiff and there is negligence by the defendant and also
by another independent person, both negligences partly
directly causing the accident, the plaintiff can maintain
an action for all the damages occasioned to him against
either the defendant or the other wrong-doer." Appar-
ently the reason why the court did not apply this common-
law doctrine in the *Bartram* case was because of the

statute limiting the liability of the defendant municipality to cases in which the injury was caused solely by the defective highway. Since we have no such statute the Maine, Connecticut and Massachusetts cases exempting municipalities from liability for statutory reasons are not applicable here.

The common-law principle announced in *Carstesen* v. *Stratford, supra,* and recognized, but held to be inapplicable, in *Bartram* v. *Sharon, supra,* is applicable in the instant case.

In *Milostan* v. *Chicago,* 148 Ill. App. 540, 543, 544, the plaintiff, a boy about eleven years of age, was injured by being intentionally thrown by another boy, named Bernard Piotrowski, into an unguarded excavation in a public street in Chicago. The court in holding that the city was not liable draws a distinction between liability for injuries caused by the joint *negligence* of the defendant and a third person and liability for injuries caused by the *willful* act of such third person. In discussing the subject the court said: "It is true that where an 'injury is the result of the negligence of the defendant and that of a third person; or of the defendant and an inevitable accident; or an inanimate thing has contributed with the negligence of the defendant to cause the injury, the plaintiff may recover, if the negligence of the defendant was an efficient cause of the injury.' *Pullman Palace Car Co.* v. *Laack,* 143 Ill. 242, 261. If an act of negligence on the part of Piotrowski and an act of negligence on the part of the city combined or cooperated—the two concurring proximately, that is, not necessarily in point of time but in causation, to the effect—so as to injure the plaintiff, then, unquestionably, both would be liable to him, jointly or severally. It would, however, in such case, be necessary in order to create liability upon both that negligence on the part of both should contribute proximately, that

758

is, as an element in the proximate cause, and without intervention of another independent force as the producing cause. In the case at bar it is to be observed that the concurring act of Piotrowski was not merely an act of negligence but it was an intentional, wilful and deliberate act." The court then proceeds to give its reasons for distinguishing between a willful act, which concurs in causing an injury, and a merely negligent act. This part of the opinion is not pertinent to the case before us for the reason that it is not claimed that in driving his car into the excavation La Barr acted intentionally or willfully, but the statement of the court as to the liability of the defendant, the city of Chicago, if Piotrowski's act in pushing the plaintiff into the excavation had been negligent and not intentional, is pertinent.

It is said in 45 C. J., p. 920, § 485: "As a general rule, it may be said that negligence, to render a person liable, need not be the sole cause of an injury. It is sufficient that his negligence, concurring with one or more efficient causes, other than plaintiff's fault, is the proximate cause of the injury. So that where several causes combine to produce injuries, a person is not relieved from liability because he is responsible for only one of them, it being sufficient that his negligence is an efficient cause, without which the injury would not have resulted, to as great an extent, and that such other cause is not attributable to the person injured. But it must appear that the person sought to be charged was responsible for one of the causes which resulted in the injury. The concurring negligence of another cannot transform the remote into the proximate cause of an injury or create or increase liability therefor," and also, p. 923, §. 486: "Under the above rules the cause concurring with defendant's negligence may be the negligent act of a third person, if the act of such other is not imputable to the person injured, or such concurring

cause may be an accident or an act of God, or some inanimate cause."

If the negligence of La Barr was of such extraordinary and unusual character that the defendant could not reasonably have foreseen it there would be room for the argument that the defendant was under no legal duty to take precautionary measures to prevent injuries that might result from it. What seems to be the law in this respect is clearly stated in *Stone* v. *B. & A. R. Co.*, 171 Mass. 536, 541, 542. In that case the defendant railroad company had negligently allowed its platform to become saturated with oil and it was subsequently fired by the act of a teamster in carelessly dropping a match resulting in the destruction of plaintiff's buildings. In holding that the railroad company was not liable, as a matter of law, the court said: "One is bound to anticipate and provide against what usually happens and what is likely to happen; but it would impose too heavy a responsibility to hold him bound in like manner to guard against what is unusual and unlikely to happen, or what, as it is sometimes said, is only remotely and slightly probable. A high degree of caution might, and perhaps would, guard against injurious consequences which are merely possible; but it is not negligence, in a legal sense, to omit to do so. * * * Tried by this test, the defendant is not responsible for the consequences of Casserly's act. There was no close connection between it and the defendant's negligence. There was nothing to show that such a consequence had ever happened before, during the eight years covered by the plaintiff's testimony, or that there were any existing circumstances which made it probable that it would happen. It was of course possible that some careless person might come along and throw down a lighted match where a fire would be started by it. This might, indeed, have happened upon the plaintiff's own premises, or in any

other place where inflammable materials were gathered. But it was not according to the usual and ordinary course of events. In failing to anticipate and guard against such an occurrence or accident, the defendant violated no legal duty which it owed to the plaintiff."

It cannot be said, however, that the negligent operation of automobiles upon the public streets of Honolulu was of such rare and unusual occurrence as to bring the instant case within the rule laid down by the Massachusetts court. On the contrary it is a matter of common knowledge that automobiles are with great frequency operated by drivers in various degrees of intoxication and that through their negligence accidents often occur. Under these circumstances we are unwilling to decide, as a matter of law, that the defendant was not charged with knowledge of these facts and that it was not his duty to anticipate them and to take reasonable precautions against their probable injurious consequences. In the Massachusetts case just referred to the court announces the rule which we think should govern the instant case. This rule is as follows (p. 540) : "It cannot, however, be considered that in all cases the intervention even of a responsible and intelligent human being will absolutely exonerate a preceding wrongdoer. Many instances to the contrary have occurred, and these are usually cases where it has been found that it was the duty of the original wrongdoer to anticipate and provide against such intervention, because such intervention was a thing likely to happen in the ordinary course of events. Such was the case of *Lane* v. *Atlantic Works*, 111 Mass. 136, where it was found by the jury that the meddling of young boys with a loaded truck left in a public street was an act which the defendants ought to have apprehended and provided against, and the verdict for the plaintiffs was allowed to stand. In the carefully expressed opinion by Mr. Justice

Colt the court say: 'In actions of this description, the defendant is liable for the natural and probable consequences of his negligent act or omisson. The injury must be the direct result of the misconduct charged; but it will not be considered too remote if, according to the usual experience of mankind, the result ought to have been apprehended. The act of a third person, intervening and contributing a condition necessary to the injurious effect of the original negligence, will not excuse the first wrongdoer, if such act ought to have been foreseen. The original negligence still remains a culpable and direct cause of the injury. The test is to be found in the probable injurious consequences which were to be anticipated, not in the number of subsequent events and agencies which might arise.' "

The court below decided that the defendant's negligence was the proximate cause of the plaintiff's injuries and we think this finding should not be disturbed.

It is further contended by the defendant that the negligence which the court below decided La Barr to have been guilty of was under the law imputable to the plaintiff and therefore the decision of the court should have been against the plaintiff's right to recover damages. This contention is predicated upon the assumption that the plaintiff and La Barr were at the time of the accident engaged in a common enterprise. If they were so engaged, within the legal definition of that term, the defendant's contention is sound and should be sustained. On the other hand, if they were not so engaged, under the great weight of authority the plaintiff is not chargeable with the negligence of La Barr. We think the law on this subject is correctly stated as follows in the syllabi in *St. Louis & S. F. R. Co. v. Bell*, 58 Okla. 84, 85: "The contributory negligence of the chauffeur cannot be imputed to one who is traveling in the vehicle with him by invitation of the owner

of the car. To render one liable for the negligence of the chauffeur, either the relation of master and servant or principal and agent must exist, or the parties must be engaged in a joint enterprise, whereby responsibility for each other's acts exists. * · * * Parties cannot be said to be engaged in a joint enterprise, within the meaning of the law of negligence, unless there be a community of interests in the objects or purposes of the undertaking, and an equal right to direct and govern the movements and conduct of each other with respect thereto. Each must have some voice and right to be heard in its control or management."

In 45 C. J., pp. 1031, 1032, § 588, the same rule is stated as follows: "Where an occupant of a conveyance is engaged in a common or joint enterprise with the operator and has an equal right to direct and control the operation of the vehicle, the contributory negligence of the operator is imputable to the occupant. To constitute occupants of a conveyance joint adventurers, there must be not only joint interest in the objects and purposes of the enterprise, but also an equal right, express or implied, to direct and control the conduct of each other in the operation of the conveyance. A mere guest or gratuitous passenger riding with the operator of a conveyance by invitation is not engaged in a common or joint enterprise with the operator, and this is so notwithstanding the guest asks to be driven to a certain place, or both parties have certain plans in common."

In its opinion the Oklahoma court fully discussed the question and cited many judicial precedents in support of its conclusion.

The evidence of the plaintiff and that of La Barr tended to show that La Barr had brought the plaintiff home in his automobile from Pearl Harbor about 4:30 in the afternoon and had later, at La Barr's invitation, tak-

en him to the house of a friend on Hart street, a short distance from the place of the accident. After visiting at this house for a while, during which time each of them drank a glass of beer, they re-entered La Barr's car and started along Hart street on the return trip to the plaintiff's house, which was located in Dowsett Lane some distance away. They were riding together in the car at the time of the accident, both occupying the front seat—the plaintiff sitting on the right and La Barr on the left. The plaintiff paid nothing to La Barr for his transportation nor did La Barr charge him anything for it.

This evidence, which is all there was on the relation between the plaintiff and La Barr, does not bring the case within the rule under which the occupant of an automobile is chargeable with the negligence of the operator.

It is further contended by the defendant that the plaintiff himself, as a matter of law, was guilty of contributory negligence and that it was error on the part of the circuit judge to decide otherwise.

The defendant's thesis is thus stated in the brief: "A person riding in an automobile driven by another, even though he may not be chargeable with the driver's negligence, is not absolved from all personal care for his own safety, but is under the duty of exercising reasonable or ordinary care to avoid injury,—that is, such care and caution as an ordinary prudent person would exercise under like circumstances." As a rule of law the thesis is sound enough but whether it was error for the trial court to decide from the evidence that the plaintiff did exercise the degree of care required of him and therefore was not guilty of contributory negligence is another matter.

As we understand the defendant's argument, he contends that the plaintiff was guilty of negligence in two respects—(1) in riding with a driver whom he knew, or

ought to have known, to be under the influence of liquor, and (2) in not properly observing his surroundings so as to become aware of the exact location of the excavation in time to warn La Barr to turn to the right where there was room enough to pass in safety. In its written decision the trial court said: "Speaking of the La Barr phase of the situation first, the evidence slightly preponderates, in the court's judgment, to the point that Mr. La Barr was holding more liquor than one should hold to drive in a careful, prudent manner; that is to say, that the quantity of liquor indicated by the evidence, and by that I am not necessarily finding it to have been taken at the home they visited, but the quantity of liquor present at the time of the accident in the system of La Barr indicates that he would not be able to make those quick judgments that emergencies on the highway sometimes call for and this emergency called for; and that he would have a tendency toward over-rashness and impulsiveness and lack of quick perception of the necessary and immediate precautionary things to be done. So as to La Barr, from La Barr's standpoint as a party, I feel that his condition was such that, even with the negligence of the defendant, his negligence contributed to the accident. But Mr. Wong was in an entirely different position, and I can't say that the evidence shows, even to a small degree, that Mr. Wong could have detected by what was observable that Mr. La Barr was in a condition to warn a man or prospective guest that he'd better not drive with him nor that the circumstances on the way were such as to indicate that a normal, prudent person should stop or get out. It seems to me that the evidence fails entirely to show that Mr. Wong was in a position to know, or take any other steps than were taken, and if Mr. Wong had been driving the car the court cannot say that Mr. Wong wouldn't have gone into the ditch. There is no evidence that Mr. Wong was intoxi-

cated, incipiently or otherwise. As a matter of fact the evidence of the mere smelling of breath, whether it was Wong's breath or La Barr's breath could be easily confused in the mind of witnesses, and there is no indication from the doctors who had Mr. Wong under treatment that they had any such difficulties as drink to worry about in treatment. There is nothing to indicate that Mr. Wong did anything or failed to do anything that a reasonable, prudent man should have done. From Mr. La Barr's standpoint the evidence slightly preponderates toward contributory negligence to the extent that would bar him from recovery; hence the court makes the finding that the defendant is liable to Mr. Wong but not to Mr. La Barr."

The plaintiff's own evidence tended to prove that the only drink he saw La Barr take was the glass of beer, already referred to, at the house of his friend. There was also evidence by other witnesses of La Barr's condition after the accident. The court having heard all the evidence on this subject and having seen the witnesses as they testified, decided that the plaintiff was not guilty of contributory negligence in riding with La Barr. We think under the rule so often announced by this court that this finding should not be overturned. We think also it cannot be said, as a conclusion of law, that the plaintiff, when he became aware of the red light located near the makai side of the excavation, should have advised La Barr to turn toward the right and that his failure to do so was necessarily negligence. It may be that if he had given this advice to La Barr and La Barr had acted on it the accident would not have occurred. But whether under all the circumstances he should, in the exercise of due care, have done so was a question of fact to be determined by the trial court. The court having determined the fact in the plaintiff's favor we cannot overturn its finding.

Exception number four relates to the overruling of an

objection which the defendant made. to a question propounded to M. Smith, a witness who testified in behalf of plaintiff. This witness testified among other things that he was in the neighborhood of Hart and McNeill streets on May 2, 1929, that being the date of the accident. He also testified regarding the red light near the Ewa side of the excavation. When asked if he knew Mr. Whaley who worked for McCandless, his answer was, "Yes, sir, he's the watchman." He was then asked the following questions to which he gave the following answers: "Q Whaley is employed as watchman by Mr. McCandless—A He was at that time. Q—is that it? Now, did you have any occasion to notice this excavation or ditch at night, particularly on May 2nd? A Yes sir. Q And how many lights were around there? A The most I ever seen was one lantern there. Q Where was that one lantern? A The lantern was on McNeill street." The witness was then shown certain photographs of the locality and pointed out the location of the light. He was then asked the following questions to which he gave the following answers: "Q Now, you say you had spoken to Mr. Whaley prior to May 2nd. What did you tell Mr. Whaley? Mr. Stainback: I object to what he told Mr. Whaley; incompetent, irrelevant and immaterial. The Court: What is the purpose? Mr. O'Reilly: We wish to show, your honor, that Mr. Smith had advised Mr. Whaley that they should have lanterns all around this place; that he told this to Mr. Whaley,—told him four or five times about this. The Court: Objection's overruled. Mr. Stainback: Exception. Mr. O'Reilly: Q What did you tell Mr. Whaley? A I told Mr. Whaley that he ought to have about, say, about six more lanterns there. Q And what did he say? A The next time, the next night—he didn't say nothing that night. The next night I told him again; I met him down near the pumping station and I told him again about the

lanterns, and he told me that McCandless would give him hell if he used too many lanterns or waste too much kerosene oil. Would raise hell with him, waste too much kerosene oil; that's what he told me." The defendant's contention regarding this exception is stated in his brief as follows: "Exception No. 4 is to a question asked plaintiff's witness Smith as to what he told one Whaley relative to placing more lanterns at the scene of the accident. As it appears that at the time of the accident Whaley was not in the employ of defendant * * * anything the witness may have told Whaley was clearly incompetent and mere hearsay. The objection ought, therefore, to have been sustained."

It is true that after Smith had testified one Jaspar B. Ross was called as a witness in behalf of the defendant. He had with him a record of the defendant's employees, and testified that Whaley was finally discharged on the morning of December 22, 1928. This testimony not being before the court at the time Smith testified that Whaley was in the defendant's service as a watchman when he spoke to him about the lights and there being no motion to exclude Smith's testimony after Ross had testified, the defendant's contention cannot be sustained.

Exception number five presents the question whether it was an abuse of discretion for the trial court to allow plaintiff's counsel to go to the extent he did in cross-examining one Myers who had testified in the defendant's behalf. It is stated in the defendant's brief that Myers had testified on direct examination to the single fact of finding a pop bottle with an inch of liquor in the automobile in which plaintiff had been riding and that plaintiff's counsel had been permitted, against objection, to cross-examine Myers relative to the lights at the excavation. The defendant is mistaken in saying that Myers was examined by him on the single fact of finding in the car a

pop bottle containing an inch of liquor. The transcript shows that this witness was also examined on other matters, such as the location of the car in the excavation and the number of people present. Under these circumstances it was entirely proper for plaintiff's counsel to cross-examine the witness as to all matters relating to the place where the accident occurred.

After the trial court had rendered its decision but before judgment was entered the defendant moved for a new trial on several grounds. The motion was denied and defendant excepted.

We have already considered the questions presented by the various grounds of the motion except one and that is whether the amount of damages awarded the plaintiff was excessive. The circuit court in its decision said on the subject of plaintiff's injuries and the compensation to which he was entitled, as follows: "As to the question of damages, that is a difficult matter to arrive at, what is fair compensation for the injuries suffered. If this scar, of the length and size that appears on Mr. Wong's face had been on a girl's face or woman's face, where questions of beauty are much more vital than they are to a man, that would be one situation. It is a scar of some size, which indicates an injury of some degree of severity. There is some evidence of possible recurrent inconvenience or difficulty with the left eye of Mr. Wong, not of such a severe character, however, as to permanently detract from his earning capacity, as far as the court has been able to analyze the evidence, but of a character possibly recurring, requiring care. The court feels, under all the circumstances of the case, inclusive of special damages suffered by way of doctor's bills and half a month loss of work, pain and suffering, the scars and the injuries had, to the reasonable sum of four thousand dollars."

We cannot say from the evidence, as a matter of law,

that the court was wrong in its estimate of the character and extent of the plaintiff's injuries or that it was wrong in fixing his compensation at the amount named.

The exceptions are overruled.

*F. Patterson* and *W. T. O'Reilly* for plaintiff.

*Kemp & Stainback* and *A. J. Buscheck* for defendant.