STANDARD TRANSP. CO. v. NEW YORK TRAP ROCK CORPORATION et al.

THE RUFUS T. GENT.

THE GREYSTONE.

No. 394.

Circuit Court of Appeals, Second Circuit. June 6, 1932.

See, also, 51 F.(2d) 251.

Burlingham, Veeder, Fearey, Clark & Hupper, of New York City (Chauncey I. Clark and Frederic Conger, both of New York City, of counsel), for appellant Long Island R. Co.

Frederick W. Park, of New York City (Benjamin T. Dannenberg, of New York City, of counsel), for appellee New York Trap Rock Corporation.

Macklin, Brown, Lenahan & Speer, of New York City (Paul Speer, of New York City, of counsel), for libelant.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge.

The Standard Transportation Company, as the owner of the tug Socony No. 24, filed this libel against the scows Gent and Greystone for salvage services rendered by the tug to the scows in the early morning of June 29, 1930. A fire which originated in a strip of the bulkhead on Newtown creek, known as the Blissville Dock of the Long Island Railroad Company, was found below to have caused the danger and damage to the scows. By petition, the New York Trap Corporation, owner of the scows, brought the Long Island Railroad Company into the salvage suit. In the same pleading it made claim against the Long Island Railroad Company for damages to the scows as a result of the fire. We need not be concerned with the latter claim.

It appears that on the afternoon of June 28, 1930, scows loaded with trap rock lay at the Blissville Dock between Dutchkill creek and Greenpoint avenue bridge. The scow Morrisey lay alongside the bulkhead at the west end. The Gent lay east of the Morrisey, bow to the west. The Greystone lay further east next to the Gent. There were cracks or openings about 1½ inches wide between the surface timbers of the bulkhead. The scows were being unloaded by means of a traveling crane, which ran on a track along the top of the bulkhead and conveyed the trap rock from the scows, across the bulkhead, to freight cars standing in the adjacent railroad yard. One man operated the crane. It is claimed that ashes or hot coals, shaken from this crane, caused the fire. At 3:15 p. m. on June 28, the crane finished discharging the Greystone and was moved along the track to the Gent and began discharging her, continuing to work until about 4 p. m. The crane was then laid up for the night at the east end of the bulkhead near a hydrant to which a hose was attached for wetting down the ashes taken from the crane. The crane engineer shook down the ashes, banked the fire for the night, and left.

About 6:30 p. m. a small fire, which concededly originated in a pile of rubbish at the end of the bulkhead, was extinguished by a hose from an engine. This fire was inconsequential. At 3 a. m. the next morning, June 29, fire broke out in the open piling of the bulkhead, near the Gent. The watchman of the railroad company turned in an alarm, ran down to the bulkhead, and with several brakemen who were in the vicinity found the bulkhead on fire. The Gent was also on fire, and the flames spread to the Greystone. A city fire boat and the tug Socony No. 24 arrived and removed the Gent and the Greystone to a place of safety. It was for this that the owner and the crew of the No. 24 were granted awards for salvage services.

The origin of this fire, as alleged in the libel and petition, is different from that testified to at the trial. The petition set forth the claim that the crane men, employees of the appellant, were observed to draw the fires, piling the hot cinders on the dock at about 6:30 Saturday evening, and the fire broke out on the dock under the cinders, that this fire was put out by use of the hose from an engine, and that the next morning, at 3 o'clock, fire again broke out on the dock due to the negligence of the railroad company in setting the dock on fire and failing to completely put out the previous fire.

At the trial it was testified that with a little water and a hose a fire was extinguished at 6:30 p. m.; also that the crane traveled forward and back and slacked fire, dropping hot coals all around the tracks. But it appears that the only way for hot coals to escape from the crane was through the door provided for raking out the ashes. The door was in good condition, and no one disputes the engineer of the crane, who testified that he prepared the fire for the night, closed the door, and left. The evidence does not justify the claim that hot coals set fire to the dock at 3:30 a. m. in the morning, nor the claim that the crane traveled forward and back on the bulkhead, dropping coals all around the

tracks on Saturday, which accounted for the fire on Sunday morning. This changed story is contradicted by the probabilities and the conclusion permissible from the circumstances.

Beyond the fact that the theory of the right of recovery at the trial was not pleaded, we think no liability has been established. The Trap Rock Corporation was obliged to prove negligence, and in this it failed. It is too speculative to infer or conclude that if hot coals were dropped on Saturday it caused the fire Sunday morning. A hot coal dropped at 4 p. m. Saturday, sufficiently small to go into one of the 1½-inch cracks between the surface timbers of the bulkhead, was unlikely to have stayed that long without causing a fire before 3 a. m. Sunday. Moreover, it appears that the fire broke out opposite the scow Gent where it was not shown that hot coals had been dropped. The bulkhead was not occupied by the employees of the railroad company after 6:30 p. m. on Saturday. The burden which was upon the libelant has not been sustained, and, in the absence of proof, no liability may be imposed. Smadbeck v. Heling Contracting Corp., 50 F.(2d) 99 (C. C. A. 2); Hustede v. Atlantic Refining Co., 74 F. 876 (C. C. A. 3); De Grau v. Wilson (D. C.) 17 F. 698; Stone v. Boston & A. R. R., 171 Mass. 536, 51 N. E. 1, 41 L. R. A. 794. There is too much in the realm of conjecture as to the cause of this fire to hold appellant responsible therefor. Stevens v. The White City, 52 S. Ct. 347, 76 L. Ed. ——; Standard Oil Co. v. Murray, 119 F. 572 (C. C. A. 7). We cannot infer that the crane, having a fire box from which hot coals were necessarily shoveled out the preceding evening, had anything to do with the fire which occurred at 3 o'clock the following morning.

Decree reversed.